MUNSON, Respondent v. SPECK, (Security General Insurance Company, Appellant)

(83 N.W.2d 479)

(File No. 9628. Opinion filed June 11, 1957)

**Gene E. Pruitt,** Sioux Falls. for Garnishee Defendant and Appellant.

**Morgan & Fuller,** Mitchell, for Plaintiff and Respondent.

RUDOLPH, J. The plaintiff has a judgment against the defendant, Alfred Speck, for injuries sustained when struck by a car driven by Speck on May 1, 1955. In this proceeding the plaintiff seeks to recover from the garnishee defendant, Security General Insurance Company, under a policy of liability insurance it had issued to Speck. The trial court held the Insurance Company liable. The company has appealed. We reverse the judgment of the trial court.

The car driven by Speck at the time of the accident was not the specific car described in the policy but was a car owned by his father. Plaintiff seeks recovery under a policy provision which provides for coverage of an automobile "not owned by the named insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; * * *"

The trial court found that the car owned by Speck and specifically covered by the policy "was temporarily not in use because of its breakdown", and that the car Speck was driving at the time of the accident came within the coverage of the above quoted provision of the policy.

The only witness to testify was the defendant Speck. It appears that the automobile specifically covered by the policy was a 1950 used Studebaker which Speck had purchased in November 1954 from Andy Pflaum, an automobile dealer at Wessington Springs. Speck agreed to pay $650

for the car. He made a down payment of $250 and was to pay the balance at the rate of $38.25 a month. Two monthly payments had been made by March 30, 1955 and on that date Speck was in default on the payments. While driving the car on March 30, 1955, a tire became flat, and having no spare tire, Speck hauled the car into a farmyard. He further testified that some "rods" were making trouble and the car was using oil, but it was not in such condition it could not be driven, except for the flat tire. Speck notified Mr. Pflaum that the car was at the farmyard, and Pflaum took the car to his garage. Speck testified, "I turned it over to Andy Pflaum and told him to take it in." It further appears that when the car was purchased Speck signed a transfer of title in blank which was left with Mr. Pflaum. After leaving the car in farmyard Speck never again saw it. Speck further testified as follows:

"Q. At that time (when the car was left in the farmyard) didn't you intend to just abandon it because you owed so much on it and you couldn't pay for it? A. Well, yes.

"Q. In other words as of that time you were through with it? A. Yes.

"Q. You didn't care what happened to it; isn't that right? A. That's right."

We are of the view that this evidence establishes without serious question that Speck had renounced any further interest in the car. He had abandoned it and "turned it over to Andy Pflaum" who held the transfer of title signed by Speck. Mr. Pflaum actually took possession of the car and it was never again seen by Speck.

Speck did answer "Yes" to a question by counsel for the plaintiff as follows: "But at the time of the accident you considered it to be your automobile?" But this conclusion of the witness is without real probative effect, when considered in the light of the facts disclosed by this record.

It is clear that there was no "loss or destruction" of this automobile within the meaning of the quoted provision of the policy. The question presented is whether the automobile being driven by Speck at the time of the accident was "temporarily used as the substitute for the

described automobile while withdrawn from normal use because of its breakdown, repair, (or) servicing." It was thirty days or more between the time the car was abandoned in the farmyard and the time of the accident. In the meantime the car had been taken into the Pflaum garage. There is no showing that it was not driven to the garage after the flat tire was repaired, or that the car was not in running condition at the time of the accident. The record is clear that Speck was not interested in whether any repairs were made. He never saw the car after leaving it in the farmyard. True, so far as Speck was concerned the car had been withdrawn from normal use, but it is apparent from the record that the reason for such withdrawal was as testified to by Speck that he was through with it, didn't care what happened to it and turned it over to Andy Pflaum. It is further apparent that Speck never intended to and never did use the Studebaker after leaving it in the farmyard. Under these circumstances we do not believe the car was "temporarily used as the substitute" for the Studebaker within the meaning of the policy. No one would seriously contend if Speck had sold the Studebaker on March 30, that a car driven by him thirty days later would be driven as a "substitute" for the Studebaker as that term is used in the policy. We do not believe the present facts any more nearly reach the situation intended to be covered by this policy provision than the actual sale of the car. The word "temporarily" read in connection with the whole of the policy indicates that it is intended the described car is to again be placed in use by the insured.

This provision, we are convinced, was not intended to cover a car used by the insured after the described car was sold or abandoned with the intention of never using it again as disclosed by the facts presently before us.

We have not been able to find a decided case very helpful in construing this policy provision and but few cases where the provision has been considered. See Utilities Ins. Co. v. Wilson, 207 Okl. 574, 251 P.2d 175; Erickson v. Genisot, 322 Mich. 303, 33 N.W.2d 803; Midden v. Allstate Ins. Co., Ill.App.2d 499, 129 N.E.2d 779; Fleckenstein v. Citizens' Mutual Automobile Ins. Co., 326 Mich. 591, 40

N.W.2d 733; Iowa Mutual Ins. Co. v. Addy, 132 Colo. 202, 286 P.2d 622; Tanner v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 6 Cir., 226 F.2d 498; Western Casualty & Surety Co. v. Norman, 5 Cir., 197 F.2d 67, 69.

In the last above cited case it is said, "To authorize such extension the party claiming it should, (certainly when in his power, as here), adduce testimony which is sufficient to show, not only that the insured vehicle had been withdrawn from service because of a breakdown, but also that except for this the insured car would have been in use at the time and in the circumstances involved. Such showing is necessary to establish 'temporary use as a substitute', i.e., a car put in place of another.

The facts in this case, as above stated, disclose without question that while Speck's car had been withdrawn from use so far as he was concerned, he had, at the time in question, abandoned it. If his car had been capable of use at the time of the accident (which it might have been in so for as this record reveals) it would not "have been in use at the time and in the circumstances involved", because he had abandoned it, he was "through with it". The car being driven at the time, in other words, was not being driven as a "substitute".

Plaintiff relies upon another policy provision, the material parts of which are as follows:

"If the named insured is an individual who owns the automobile classified as 'pleasure and business' * * * such insurance as is afforded by this policy for bodily injury liability, for property damage liability and for medical payments with respect to said automobile applies with respect to any other automobile, subject to the following provisions:

"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes (1) such named insured * * *

"(b) This insuring agreement does not apply:

"(1) To any automobile owned by, hired as part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household * * *"

We have considered the findings of the trial court and do not find that the court made any finding on this feature of the case. Under the agreement as above set out the use of other automobiles is not covered by the insuring agreement if "furnished for regular use to the named insured." There is no finding that this automobile was or was not furnished to the defendant Speck for regular use by his father. As we read the findings the trial court placed liability upon the policy provision relating to a temporary substitute automobile which we are convinced for the reasons heretofore given does not sustain liability in this case.

The policy further provides that written notice of the accident shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable and further if claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons, or other process received by him or his representative. It is conceded in this case that the insurance company had no notice of this accident until they were advised of the accident by Andy Pflaum approximately 45 days after its occurrence. The record is silent upon the question of whether the company was ever advised that a suit against Speck had been commenced or whether the company ever received any of the papers in connection with such suit. The company after being advised of the accident by Andy Pflaum did on two separate occasions thereafter make an investigation of the accident and in the course of this investigation took certain written statements from the defendant Speck. The trial court held that the company waived the provision of the policy requiring notice by making the investigations. This record is so meager upon this issue and in view of the fact that the judgment must in any event be reversed, we refrain from expressing any opinion thereon at this time.

The judgment appealed from is reversed.

All the Judges concur.