### Michael Harte v. Peerless Insurance Co. et al

[183 A.2d 223]

May Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed July 16, 1962

*O'Neill, Delany & Valente* for the petitioner.

*Webber, Costello & French* for petitionee Peerless Insurance Co.

*Richard F. Sullivan* for petitionee Delaware & Hudson Railroad Corporation.

**Holden, J.** This action in equity was instituted to obtain declaratory relief concerning the coverage of an automobile liability policy issued by the defendant Peerless Insurance Company. The principal contention concerns the application of the "substitute vehicle" provision in the insurance agreement. The chancellor decreed there was no coverage under the policy. The defendant Delaware & Hudson Railroad Corporation suffered property damage from the operation of the vehicle for which protection is claimed. The railroad appeals.

There are two assignments of error. One concerns the exclusion of a question on cross-examination of the plaintiff's mother by counsel for the appellant. She was asked if a representative of the Peerless Insurance Company indicated to her that there was coverage under the policy. The question was answered in the affirmative. Upon objection the answer was stricken.

We find no error in the ruling. The representative was not identified and there was no showing of the authority or capacity in

which he served his principal. Without some foundation that the utterance was within the apparent range of the employee's authority, the statement was properly excluded. *Jones* v. *Gay's Express, Inc.,* 110 Vt. 531, 534, 9 A.2d 121. Compare *McDonnell* v. *Montgomery Ward & Co.,* 121 Vt. 221, 225, 154 A.2d 469, 80 A.L.R.2d 590.

The appellant's remaining claim of error relates to the findings of fact. According to the chancellor's statement of facts, the policy in question was written by the Peerless Insurance Company and issued to the plaintiff's mother, Rose M. Harte on July 9, 1959. The vehicle described in the insurance agreement was a 1953 Dodge sedan. The policy was in full force and effect on December 24, 1959 which is the date of the event that is the subject of this controversy. The contract contains these printed provisions:

> "Coverage B—Property Damage Liability; To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile."

> "III. Definition of Insured: (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

> "Section IV (a) (3). Temporary Substitute Automobile— under coverages A, B and division 1 of coverage C, an automobile not owned by the named insured or his spouse if a resident of the same household, while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing loss or destruction;"

The findings state that in September 1959, the insured vehicle "was out of commission and was parked at the Harte home in West Rutland." It remained in this status, at least until December 24, 1959.

On this date the plaintiff, Michael Harte, borrowed an Oldsmobile automobile which became involved in the accident in question and

damaged the property of the railroad. Michael is the son of the named insured and resides with her.

The chancellor found that Michael borrowed the Oldsmobile without his mother's knowledge. The substance of this finding is the first point raised in the railroad's appeal.

The fact as reported by the trier is in direct conflict with Mrs. Harte's testimony on the issue. Her direct testimony was:

Q. Now, will you tell the Court what, if anything, you knew about any arrangements that were made by your son to drive Henry Daley's car?

A. Yes, I did. I asked Mike to go down and borrow his car to bring some Christmas presents home.

Q. And to your knowledge did he borrow Henry Daley's car?

A. Yes.

Q. And did he use it to bring Christmas presents to your home?

A. Yes.

It developed on cross-examination that the witness had given a statement to a representative of her insurance carrier that she didn't know "for sure" that her son was going to drive the Daley car but she had "told him to go and get it. . ." In this connection, the defendant Peerless Insurance Company requested the court to find: "Rose M. Harte did not know for sure the plaintiff was going to drive the Daley car on the 24th day of December 1959 though she thought he would do so."

Apparently the chancellor adopted the idea that in order for the insured to have knowledge that the Daley vehicle had been borrowed, it was necessary for her to be present when the transaction occurred. Knowledge, in law, is not so rigidly conceived, nor so narrowly applied. It is sufficient if the circumstances be such as to engender reasonable belief that an actual fact has indeed been accomplished. *State* v. *Alpert,* 88 Vt. 191, 203, 92 Atl. 32. The finding of the court that the Daley vehicle was borrowed without the knowledge of Mrs. Harte has no support in the evidence and cannot stand. Had the finding, as made, been valid, perhaps we could infer, in support of the decree, that Mrs. Harte did not authorize the substitution of the borrowed car for the vehicle described in the insurance agreement. With the finding as to knowledge removed the decree has no support

in the findings. Two essential issues joined by the pleadings are left unanswered.

■ In line with the provisions of the substitution clause of the policy, the complaint alleges (1) that the 1952 Dodge specified in the policy was withdrawn from normal use for repair and servicing; (2) that the Daley vehicle was borrowed pursuant to the request of the named insured as a substitute vehicle. Each of these allegations was specifically denied by the insurer. It is vital to declaratory relief that these issues be established by the trier of the facts.

■ Clearly, the object of the substitution clause is to afford a temporary insurance expedient to protect the insured's operation of a borrowed vehicle during the period of repair until the automobile named in the policy is restored to normal use. The provision is not to be unreasonably extended to materially increase the risk contemplated by the insurer. Neither is it to be narrowly applied against the insured for the clause was designed for his protection. *Lloyds America* v. *Ferguson,* (C. A. 5) 116 F.2d 920, 923; *Farley* v. *American Automobile Insurance Co.,* 137 W. Va. 455, 72 S.E.2d 520, 34 A.L.R. 2d 933, 935; 5 Am. Jur. Automobile Insurance §87, p. 85.

The findings report that the vehicle named in the contract was "out of commission" and had remained parked at the owner's home for some two months before the accident occurred. The defending insurance carrier urges us to infer from these facts that the owner had no intention of repairing the car and had virtually abandoned it. It is argued that the temporary aspect of the whole event had expired, citing *Munson* v. *Speck,* 76 S. D. 599, 83 N.W.2d 479.

The insurance contract itself fixes no limit in time during which the temporary extended coverage is to be effective. And while there is evidence from which an intention to discontinue further use of the Dodge sedan might be inferred, it is opposed by the very fact that the policy on the vehicle was kept in effect. In the last analysis the intention of the insured in this regard was a factual issue for the chancellor to determine.

■ While the appellate court must indulge all reasonable intendments in support of the decree entered below, we cannot supply an essential fact which the chancellor overlooked or ignored unless it is fairly inferable from other facts stated in the findings. *Glass* v. *Newport Clothing Co.,* 110 Vt. 368, 375, 8 A.2d 651. So in this in-

stance, we cannot say that the substitute protection provided in the insurance contract should be forfeited as a matter of law solely on the strength of the fact that the repairs to the insured vehicle had not been accomplished in the three-month interval that elapsed after it had been withdrawn from normal use.

■ Lastly, according to the cause alleged in the plaintiff's complaint, it was necessary for the court of chancery to determine whether the Daley vehicle was borrowed at the request of the plaintiff's mother. As the owner of the vehicle described in the policy, only she could authorize the procurement of a substitute vehicle. And only the named insured could grant permission for its use to bring the plaintiff within the protection of the policy. If the borrowing was done at her request and in her behalf, the plaintiff's operation and control of the vehicle would be attributable to her within the test of agency prescribed in *Brown* v. *Galipeau,* 116 Vt. 290, 293, 75 A.2d 694 and *Young* v. *Lamson,* 121 Vt. 474, 477, 160 A.2d 873. It is only by an affirmative determination of this issue that the plaintiff could establish that the borrowed vehicle was in his mother's possession and control to the same extent as the vehicle designated in the policy would have been, except for its breakdown. See *Tanner* v. *Pennsylvania Threshermen & Farmers' Casualty Insurance Co.,* (C. A. 6) 226 F.2d 498.

These several issues must be considered and settled in order to correctly adjudicate the declaratory relief sought in the petition. Since the decree that was entered is not so constituted, it must be reversed.

*Decree reversed and cause remanded.*