CONTINENTAL CASUALTY COMPANY, a corporation of the State of Illinois, Plaintiff, v. THE OCEAN ACCIDENT AND GUARANTEE CORPORATION, Limited, a corporation of Great Britain, LEONARD RICHARDS, INC., a corporation of the State of Delaware, WILMINGTON TRUCK RENTAL COMPANY, INC., a corporation of the State of Delaware, DANIEL F. KELLEHER, Adm. De Bonis Non Cum Testamento Annexo of the Estate of Leonard Richards, Jr., Deceased, JOHN SENTMAN, JR., ALLICE D. SENTMAN, JOHN SENTMAN, III,

and KAY SENTMAN, infants, by their next friend, JOHN SENTMAN, JR., and LEONA M. HAMON, Defendants.

(*April* 22, 1965)

LYNCH, J., sitting.

*Frank J. Miller* (of Walker, Miller & Wakefield), for plaintiff Continental Casualty Co.[1]

*Prickett & Prickett,* for defendant Ocean Accident and Guarantee Corporation, Limited.[2]

*Vincent Theisen* (of Theisen & Lank), for defendants Leonard Richards, Inc. and Daniel F. Kelleher, Adm. De Bonis Non Cum Testamento Annexo of Estate of Leonard Richards, Jr., Deceased.[3]

*David B. Coxe, Jr.* and *Carl Schnee* (of Coxe, Booker, Walls & Cobin), for defendants John Sentman, Jr., et al.[4]

Defendant Wilmington Truck Rental Co., Inc., has made no appearance in the case.[5]

Superior Court of Delaware, for New Castle County, No. 122 Civil Action, 1961.

LYNCH, Judge.

----

[1]Plaintiff will be referred to as Continental.
[2]This defendant will be hereafter referred to as Ocean.
[3]These defendants will hereafter be referred to as the Richards, except where specificity requires more particular reference.
[4]These defendants will be referred to as injured defendants.
[5]Hereafter referred to as Rental Company.

It appears from the complaint that there was a collision on July 26, 1959 on the Kennett Pike in Christiana Hundred, between a Volkswagen panel truck, owned by Rental Company and leased to Richards, Inc., and driven by Leonard Richards, Jr., now deceased, and an automobile driven by defendant Hamon, in which Mrs. Hamon and the defendants Sentmans were riding, resulting in the serious personal injuries of Mrs. Hamon and the Sentmans. Mr. Richards was killed in the collision.

Continental had issued a policy of automobile liability insurance to Rental Company which covered liability of the lessees of its motor vehicles. The complaint charges Leonard Richards, Jr. and/or Richards, Inc. had a policy of automobile liability insurance with defendant Ocean, which was in effect on the date of collision; it was further alleged that Ocean has denied coverage and refuses to defend litigation brought by defendants Mrs. Hamon and the Sentmans against the Richards' Estate and Richards, Inc. Plaintiff, Continental, also claims subrogation rights as against Ocean for any liability payments it has had to make to the injured defendants. Ocean asks the court to declare—

"(1)   The existence and extent of coverage of the potential liabilities of Executrix and Richards, Inc. to Hamon and Sentmans under policies issued to Executrix and Richards, Inc. by Ocean.

"(2)   The duty of Ocean to defend against such potential liabilities.

"(3)   The existence and extent of coverage of the potential liabilities of Executrix and Richards, Inc. to Hamon and Sentmans under the policy issued by Continental to Rental Co.

"(4)   The duty of Continental to defend such potential liabilities.

"(5)   Whether or not the claims against Rental Co. should be dismissed as provided in 21 *Del. C.* Sec. 6102(d).

"(6) The ratio in which Continental and Ocean should contribute to any future judgment in favor of Hamon or any of the Sentmans in the above cited actions.

"(7) Such other and further relief as the Court shall deem proper."

Ocean's answer denied that allegation in the complaint which read—

"9. At the time of the accident Leonard Richards, Jr. and Richards Inc. had automobile liability insurance policies with Ocean which cover the claims, set forth in the above actions against Executrix and Richards, Inc., and which require Ocean to defend on behalf of Executrix and Richards, Inc. against said claims."

Its answer, however, otherwise expressly or impliedly admitted the other and remaining allegations of the complaint.

Continental filed requests[6] under Rule 36, *Del. C.* Ann. directed to Ocean, requesting it to admit that it had issued Policy No. AB 51—02—4187 to Leonard Richards on August 16, 1958, covering a 1953 Chevrolet Bel-Air Convertible Coupe, Serial No. BO 17762, 2 Dr. Sedan, although this automobile was owned by Leonard Richards, Inc. The requests asked Ocean to admit this policy was in full force and effect on July 26, 1959—the date of the collision. Ocean filed no answer or response to these requests for admission.

The Rules of Civil Procedure of this Court (Rule 36) provide, among other things, that—

---

[6]The requests for admission also referred to Policy No. OM 58710, issued by Ocean on May 1, 1959 to Leonard Richards, Inc., covering a Plymouth 2 Dr. Sedan—Serial No. 12738766. That car had been damaged and disposed of—affidavit of one Roland Van Sant submitted by (see paper No. 48) the defendants Hamon and Sentmans—in "the late Spring"—or "early Summer of 1959"—before the collision as is shown hereafter. It does not figure in this litigation, so little, if ay, further reference will be made to it.

"Each of the matters of which an admission is requested shall be deemed admitted unless * * * the party to whom the request is directed serves upon the party requesting the admission, either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters, or (2) written objections * * *."

■ Ocean did neither, so the court, for purposes of the motion, considers (1) that the policies were issued; and (2) they were in effect on the date of the collision, *Lowden v. McAndrews,* D.C., 2 F.R.D. 36 (1941) and *United States v. Jefferson Trust & Savings Bank,* 31 F.R.D. 137 (1962).

Continental submitted a certified photostat copy of an application for a title to the 1951 Chevrolet 4 Dr. Sedan, which was signed June 30, 1959, showing title was taken in the name of Leonard Richards, Inc.

Ocean, however, as part of its discovery, submitted an affidavit made by an officer of Lawson Cooper Company, Ocean's Agent—the pertinent portions of which are:

"* * * that he is the President of Lawson Cooper, Inc., the agent through which Ocean Accident and Guarantee Corporation, Ltd. policy No. AB 51—02—41—87 referred to in the plaintiff's brief in support of its motion for summary judgment, was written; that on some date between July 6, 1959 and July 26, 1959, the date of Leonard Richards, Jr.'s death, Lawson Cooper, Inc. received from said Leonard Richards, Jr. a request for cancellation of said policy, a copy of which request is attached."

The so-called request is in the following form:

**ENDORSEMENT #5**

In consideration of a Return Premium of Three and 56/100 Dollars ($3.56), it is hereby understood and agreed that:-

Coverage "E"-Collision - Actual Cash Value - less $100.00 deductible

under this Policy is hereby eliminated.

The effective date of this endorsement is June 18th, 1959.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned policy, other than as above stated.

This endorsement when signed by a duly authorized representative of the undermentioned Company and attached to policy No. AB51-02 41 97 issued to THOMAS RICHARDS, JR., of Wilmington, Delaware shall be valid and shall form part of said policy.

Received and accepted by THE OCEAN ACCIDENT & GUARANTEE CORP. LTD.

*(Insert name of company)*

Signed by _____ Assured.

_____

*Authorised Representative*

7/6/59 x.

Please sign this endorsement as accepted, and return to us.

Thank you.

Lawson-Cooper, Inc.

*Please cancel as of a week ago if possible. Thans, Rentig one new — let me know prorate...*

After oral argument counsel for Ocean, in a letter addressed to the court, under date of April 14, 1965, stated:

"* * * due to the confusion surrounding Mr. Richards' accident on July 26, 1959 and his subsequent death, formal cancellation was not, in fact, carried out. The policy was renewed on August 16, 1959, to cover another automobile owned by Mrs. Richards."

It, therefore, appears that on the date of the collision, the policy of insurance had not been cancelled, but was still in effect on the Chevrolet.

Counsel for Continental and the Hamon and Sentman defendants strenuously argued against the court's giving any consideration to this affidavit and its attached "request for cancellation," contending that the so-called Dead Man's Statute, 10 *Del. C.* Sec. 4302, is sufficient reason for the court to reject the affidavit.

In my opinion, the cited statute is not a reason for the court to reject the papers since Mr. Cooper, who made the affidavit, acting for Lawson-Cooper Company, was not an agent of any party to the suit. *American Secu;. Glass Corp. v. Shatterproof Glass Corp.,* 154 F. Supp. 890, 893 (D.C. Del. 1957) interpreting 10 *Del. C.* Sec. 4302. I do not, however, give consideration to the affidavit and its attached "request" for cancellation, because (1) it is most ambiguous; (2) it does not represent a completed transaction; and (3)—and most important—it is to say the most for it, "hearsay." I can find no rule in the law of evidence that permits my consideration of the contents of the affidavit and/or the attached "request" for cancellation. Ocean has not identified the handwriting on the "request" as that of Leonard Richards and would have the court give effect to a statement allegedly made by Mr. Richards, as against Continental and the defendants Hamon and Sentmans, without giving them the right to cross-examine Mr. Richards. I give no effect to the affidavit for any of the purposes of the pending motion.

Depositions have been taken and the plaintiff has filed a motion for summary judgment, urging there is no genuine issue of fact,[7] and submitting the case on the record and the law. Since Ocean

---

[7] At a conference held in Chambers before September 20, 1963, attended by all then counsel for the parties, it was agreed by all counsel that the issue of coverage of the policies was quite important, and should be determined before the court considered any other issue. It was conceded by William Prickett, Sr., then counsel for the defendant Ocean, that there was no dispute of fact between him and

contends there is an issue of fact, the court is required, *Jones v. Julian,* Del., 195 A.2d 388, 389 (Sup. Ct. 1963), to examine the record to determine if there is a genuine issue of a material fact. A review of the record discloses the discovery process utilized by the parties.

The deposition of W. H. Homan of Swedesboro, New Jersey shows that he is the Chevrolet dealer in that town; that about July 8, 1959 he brought the Chevrolet Sedan titled in Richards, Inc. but insured under Mr. Richard's personal policy, to the Homan place of business in a disabled condition. Mr. Homan appeared to be fully familiar with the car and its title, and he identified the car as one belonging to Richards, Inc. It further appears from the Homan deposition that Mr. Richards had come to Homan Garage with the disabled Chevrolet and that the car was so badly damaged it had only salvage value and it was not worth repairing. Mr. Homan paid Mr. Richards $25 for the damaged car.

The deposition of one William B. Moore, of the Rental Company, was also taken. He testified that the Rental Company had thereafter, on 3 various dates—a week apart—leased motor vehicles to Leonard Richards, Inc.—the last lease having been made July 24, 1959.

---

counsel for plaintiff (1) as to the ownership of the automobiles that figure in the case or (2) of the policies referred to in the suit or (3) of the lease agreements involving Leonard Richards, Inc. or Leonard Richards, Jr., personally, and Wilmington Truck Rental Company, Inc.

Reference to paper marked by the Prothonotary as No. 27—Order fixing the Schedule relating to filing Supporting Papers and Briefs on Plaintiff's Motion for Summary Judgment—will show some 9 months were given the parties to make discovery in support of their respective contention on this issue of coverage of Ocean's policy. The briefs filed relate to no issue of fact, although Ocean argued the point. Ocean's brief in opposition to Continental's motion for summary judgment (Pager 34 in the file) reads:

"This defendant accepts Continental's statement of facts with this addition: it appears from the Cooper affidavit that Richards did not intend to maintain his insurance with Ocean on the car he had sold, but intended to cancel it."

The brief then presented "The Issue"—"Did Ocean's policy cover the Volkswagen truck which Richards was driving at the time of the accident?"

Therefore, I give no consideration to a letter written by Rodman Ward, Jr., on November 6, 1964—after oral argument—since it was contrary to the theretofore express agreement of counsel. William Prickett, Sr. represented Ocean at the conference. He has since died. Mr. Ward was not at the conference and was unaware of Mr. Prickett's commitments made there.

This lease identified the rental car and showed that it covered the Volkswagen panel truck which was demolished in the collision between Mr. Richards, Jr. and the Hamon car on July 26, 1959, and in which Mr. Richards was killed.

An examination of the papers before the court shows no genuine issue of fact; the only questions presented are legal in nature. I am further supported in this ruling by reference to Ocean's brief, supra, p. 747.

Briefs have been filed by Ocean's counsel and counsel for Mrs. Hamon and the Sentmans in support of the motion for summary judgment. As noted, Ocean has filed a brief in opposition thereto.

In the briefs filed in support of the motion, the parties have concentrated their attention to Policy No. AB 51–02–4187, issued to Leonard Richards, Jr., which covered the Chevrolet automobile. This car is the one which had been transferred to Leonard Richards, Inc. on June 30, 1959 and insured by Ocean under the policy identified above.

So far as is pertinent, the only facts before me are that Ocean had, under a policy issued to Leonard Richards personally, insured the Chevrolet Sedan, titled in the name of Leonard Richards, Inc. That car was so badly damaged on July 8, 1959 that it was sold to W. H. Homan.

Rental Company then leased cars to Leonard Richards, Inc.—three in all—on weekly bases. On July 26, 1959, while Mr. Richards was driving one of these rented vehicles, he was involved in a collision, resulting in his death, and apparently serious injuries to the Hamon and Sentman defendants.

The question for determination is the coverage of Ocean under the policy and its liability to Continental and the Hamon and Sentman defendants. That, therefore, leaves for decision only the liability of Ocean under provisions of that policy. I have to determine if Mr. Richards, at the time of the collision, was using the Volkswagen panel truck as a "temporary substitute automobile," as defined in the policy.

Since this is the important phase of this case, I quote the pertinent provisions in whole. The following terms are defined in and under the Ocean Policy No. AB 51—02—4187, issued to Leonard Richards, Jr.:

"Definitions

" 'named Insured' means the individual named in Item 1 of the declarations and also includes his spouse, if a resident of the same household;

" 'Insured' means a person or organization described under 'Persons Insured;'

"* * *;

" 'owned automobile' means

"(a)   a private passenger or utility automobile described in the policy,

"(b)   a trailer owned by the name insured, provided with respect to Part III it is described in the policy,

"(c)   a private passenger or utility automobile or, with respect to Part III, a trailer, ownership of any of which is acquired by the named insured during the policy record, provided

"(c)   a private passenger or utility automobile or, with respect to Part III, a trailer, ownership of any of which is acquired by the named insured during the policy record, provided

"(1)   it replaces a described automobile or trailer, or

"(2)   the company insures all private passenger or utility automobiles or trailers owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days following such date;

"and includes a temporary substitute automobile."

" 'temporary substitute automobile' means any automobile or trailer, not owned by the named insured, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;"

The following appears at a later point:

"Persons Insured

"(a)    With respect to the owned automobile

"(1)    the named insured and any resident of the same house

"(2)    the other person using such automobile, provided the actual use thereof is with the permission of the named insured"

Continental and the injured defendants cite *Harte v. Peerless Ins. Co.*, 123 Vt. 124, 183 A.2d 223, 226; they argue it is persuasive and urge it should be followed by this court. Ocean, on the other hand, contends that the Cooper affidavit showed an intention on Mr. Richards' part to cancel the policy of insurance covering the Chevrolet, and, as a consequence, the Harte case was inapplicable, since Harte continued to own his vehicle, Mrs. Richards in her deposition, post, p. 751, pointed to the need Mr. Richards had for an automobile, to be used in his business. Since he is dead we can only conjecture what he intended to do about replacing the damaged Chevrolet. I feel strongly he would, in time, have acquired a car on a permanent basis. Inasmuch as I have rejected the Cooper affidavit and the attached "Request for Cancellation," I will give no effect to it or rely on any argument premised thereon. Then too, Ocean also cited *Munson v. Speck*, 76 S.D. 599, 83 N. W. 2d 479 and *Tattersall v. Drysdale* (1935) 2 K.B. 174. It appeared the insureds in those cases have disposed of their vehicles before the accidents in which rented or loaned vehicles were involved. I, therefore, regard the Tattersall case as wholly inapplicable, in that the

opinion shows the policy did not have a "temporary substitute" clause with language such as is to be found in the policies in the case at bar. In Tattersall the court noted the defendant's policy had a clause—

"extending the benefits of the policy to a person driving with the permission of the assured 'provided that such person is not entitled to indemnity under any other policy'."

The plaintiff, on the other hand, had a policy with a clause—

"extending the indemnity against third party risks to the assured 'while personally driving for private purposes any other private motor car * * * not belonging to the assured in respect of which no indemnity is afforded the insured by any other insurance applying to such car' provided that the car thereby insured should not be in use at the same time."

Plaintiff in the Tattersall case had sold his car and the seller had loaned him a car. The court held only that he could not claim indemnity under his policy, as plaintiff's policy was no longer effective since he had sold his car, but that defendant's policy was effective under the extension clause. I see no relationship of the holding of Tattersall to the question for decision in the case under consideration.

Secondly, the Munson case is likewise distinguishable on its facts. In that case, the automobile had not been destroyed (as in the fact in the present case) but it had been abandoned by the assured because of his financial plight; he couldn't afford to operate it, although it was useable. That clearly appears from the court's opinion, 83 N.W.2d, pages 479-480. Hence, I likewise consider that case as inapplicable.

Fact situations quite similar to those appearing in the case at bar were involved in *McKee v. Exchange Ins. Asso.*, 270 Ala. 518, 120 So.2d 690, 692, 693 (Ala. Sup. Ct. 1960); *Freeport Motor Casualty Co. v. Tharp*, 338 Ill. App. 593, 88 N.E. 2d 499 (1949) and in *Musso v.*

*American Lumbermen's Mut. Cas. Co.,* 14 Misc. 2d 450, 178 N.Y.S.2d 377 (Sup. Ct. N.Y. 1958). It appeared in those cases that (1) the car covered by the insurance policy was damaged and could not run; (2) prior to the collision, wherein policy liability could attach, such cars had been sold, because of their damaged condition and (3) the damage sued for had occurred while insured was driving another car. In McKee the insured had been driving the other car for four months after the insured's car had been destroyed.

Under the authority of these last cited cases and *Iowa Mut. Ins. Co. v. Addy,* 132 Colo. 202, 286 P.2d 622 and *Fleckstein v. Citizens Mut. Ins. Co.,* 326 Mich. 591, 40 N.W.2d 733, I hold that the rented vehicle damaged in connection with the death of Leonard Richards, Jr. came within the "temporary substitute" clause of Ocean's policies. I rule that an "owned automobile" became any automobile described in the policy, whether or not actually owned by the name insured, and it included the Chevrolet which broke down on July 8, 1959 and was sold to Mr. Homan, although it may have actually been owned by Richards, Inc., since it was an automobile described in the policy. I further rule that from the facts before me that the Volkswagen panel truck which Leonard Richards, Jr. was driving at the time of the collision was a "temporary substitute automobile" for the Chevrolet described in the policy, since under the policy, a "temporary substitute automobile" is defined as follows: (Request for Admissions, Exhibit A, Part 1—Liability: Definitions) supra, p. 748 and p. 749.

Every case involving definition of "owned automobile" and in which liability of the insurer is asserted where the insured is driving a "substitute automobile" must be decided on its own facts and circumstances, see *Home Insurance Company v. Kennedy,* 2 Storey 42, 47, 152 A.2d 115, 118 (Del. Super. Ct. 1959).

The policy provision is not entirely clear; in a sense it can be said to be ambiguous, hence, I think what the Fifth Circuit Court of Appeals said in *Continental Casualty Company v. Suttenfield,* 5 Cir., 236 F.2d 433, 437, is applicable and of help here:

"\* \* \*.

" 'It is elementary that a policy of insurance, if ambiguous, must be construed most strongly against the insurer. There is also the well-settled rule that the parties are at liberty to make such contract as they please, provided they do not contain clauses prohibited by law or public policy, and the provisions in favor of the insurer are reasonable and just.' \* \* \*

"\* \* \*.

"In searching for the intent of the parties and the meaning of the words they have used, we may consider the purpose to be accomplished by the policy provision. *Stinson v. New York Life Ins. Co.,* 1948, 83 U.S. App. D.C. 115, 167 F.2d 233. Judge Chestnut, of the District Court of the District of Maryland, thus stated the purpose:

"The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely causal use of an automobile other than the one described in the policy, \* \* \*."

The Supreme Court of Vermont recently said (October 6, 1964) in *American Fidelity Co. v. North British & Merc. Ins. Co.,* 124 Vt. 271, 204 A.2d 110, 112:

"Since the object of the insuring agreement is the assumption of tort liability which is expected to arise out of circumstances beyond the mutual control of the contracting parties, too narrow construction may defeat the purpose of the agreement. It is because of such consideration that most courts give a broad, rather than a narrow, construction to liability policy language. *Harte v. Peerless Ins. Co.,* 123 Vt. 120, 124, 183 A.2d 223. Since these liability policies are drafted by the insurer, it is not unreasonable, having in mind that the policies are sold as shields against liability claims, to construe the terms of the agreement as broad as its intended purpose, and giving its language appropriate breadth of meaning. \* \* \*."

It has not been shown that Leonard Richards, Jr. had ever rented a motor vehicle prior to July 8, 1959—on which date he rented one from Rental Company for a week—after his Chevrolet was badly damaged and had become a loss. In fact the most that has been shown is that his total automobiles rentals covered a period of no more than 18 days, and during this 18 days' span, he had rented and used three different vehicles—each on a weekly rental basis.

In the deposition of Amanda du Bree Richards, his wife, taken in Civil Action No. 1168 and Civil Action No. 1263, 1959, on June 15, 1960 by attorneys for the injured defendants in this litigation, she testified (p. 747 et seq.) that she saw Mr. Richards at Lewes a few days before the collision—which took place on July 26,1959—driving a fancy looking Chevrolet, rented from Hertz.

No evidence whatsoever has been produced, that the rental engagements of automobiles made by Mr. Richards were for any purpose other than temporary transportation, made necessary because of the "loss" of the Chevrolet car and the needs of his business, as well as for pleasure. The policy so provides.

In light of this somewhat meager showing on the part of Ocean, *Colish v. Brandywine Raceway Ass'n.*, 10 Terry 493, 499, 119 A.2d 887, 892, (Super. Ct. 1955) and *Woodcock v. Udell*, 9 Terry 69, 80, 97 A.2d 878, 883 (Super. Ct. 1953), I can only conclude that liability coverage in its Policy No. AB 51-02-4187 was in effect on the day of the collision; therefore, if Mr. Richards was operating the Volkswagen panel truck in a negligent manner, Ocean was obligated to defend the litigation brought by Mrs. Hamon and the Sentmans against his estate. Ocean's ultimate liability on the policy will be determined by the outcome of that litigation, but at this posture the court finds and concludes that Ocean was obligated under the heretofore identified policy to defend the pending litigation under its terms.

Counsel should confer on the form of order to be entered in this cause and present such order to the court for signature. If counsel are

unable to agree, any party may, through counsel, submit an order to the court on notice.