NELSON, Appellant

v.

ST. PAUL MERCURY INSURANCE COMPANY, Respondent and CLARK et al., Cross-Appellants

(153 N.W.2d 397)

(File Nos. 10335—10344. Opinion filed October 26, 1967)

34

**Robert L. Jones,** Sioux Falls, for plaintiff and appellant.

**Willy, Pruitt & Matthews, Acie W. Matthews,** Sioux Falls, for Floyd E. Carlon, defendant and cross-appellant.

**Samuel W. Masten,** Sioux Falls, for defendant and respondent, St. Paul Mercury Ins. Co.

HANSON, Judge.

Plaintiff, Douglas E. Nelson, was involved in an automobile accident on August 31, 1964 causing injuries and damages to Jo Anne and Shirley G. Clark, Jr. Personal injury actions commenced by the Clarks resulted in judgment against plaintiff and his employer, Floyd E. Carlon. This action for a declaratory judgment followed by plaintiff Nelson to determine rights and obligations under two automobile insurance policies issued by the defendant, St. Paul Mercury Insurance Company. Plaintiff Nelson appeals and defendants Clark cross-appeal from a judgment entered in favor of the insurer.

The facts are not essentially disputed. On the date of the accident Nelson was engaged in servicing vending machines for Floyd E. Carlon. He owned a 1953 Chevrolet and his wife owned a 1958 Oldsmobile. Both vehicles were insured under separate liability insurance policies issued by the St. Paul Mercury Insurance Company.

On or about May 2, 1964 the Chevrolet was extensively damaged by a hit and run driver. With reference to its subsequent use and condition plaintiff testified:

"Q On August 31, 1964, were you driving the Chevrolet? A No.

\* \* \* \* \* \*

"Q Did you drive it on occasions? A Yes I did.

"Q What type of an occasion would you use it?
A When I just had to use it.

"Q Did you do any repair work to it after the vehicle was damaged by hit and run? A Nothing other than to pull the metal away from the wheel.

"Q Were you holding off doing any repair work?
A I didn't feel the car was worth it.

 \* \* \* \* \* \*

"Q As you testified previously your car wasn't worth repairing, is that right? A Right.

"Q And you didn't repair it? A No.

"Q Has it been junked? A I understand that it has now.

"Q When was it junked? A I don't know.

"Q What did you do with it after the accident? A I sold it to a couple of buddies of mine.

"Q When? A In September or October, I believe. I'm not for sure.

"Q Up to that time it had just been parked, is that correct? A Most of the time, yes."

On the morning of the accident plaintiff drove the Oldsmobile to work. At noon his wife took him to work and kept the car for her own use. That afternoon plaintiff answered a service call using a 1951 Chevrolet panel truck which was parked at the vending company and owned by Harold Carlon. He had only used the truck twice before for this purpose as he ordinarily furnished his own transportation. On returning to the shop the accident occurred in which the Clarks were injured. According to plaintiff's testimony he would have been driving his 1953 Chevrolet at the time of the accident if it had not been previously damaged and disabled. He had renewed the policy of insurance on the Chevrolet on June 3, 1964. The policy declarations indicated the car would be used in going to work.

Plaintiff contends he was afforded insurance protection and coverage while driving the panel truck at the time of the accident in which the Clarks were injured under:

1. The "temporary substitute automobile" clause of the insurance policy on his 1953 Chevrolet; or

2. The "non-owned automobile" clause in either the insurance policy on his 1953 Chevrolet or the policy on the 1958 Oldsmobile; or

3. The provisions of the Financial Responsibility Laws of South Dakota.

Only the first contention requires discussion. In this regard the insurance policy on the 1953 Chevrolet contained the following insuring provision whereby the insurer agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by any person;

B. injury to or destruction of property, including loss of use thereof, hereinafter called 'property damages'; arising out of the ownership, maintenance or use of the owned automobile * * *."

The policy further contained the following definitions:

" 'owned automobile' means the described private passenger, farm or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile * * *

" 'temporary substitute automobile' means any automobile or trailer, not owned by the named insured, while temporarily used as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;"

■ A substitute automobile provision extends coverage to an insured who is temporarily using a vehicle not owned by him as a substitute for the insured automobile which has been withdrawn from normal use because of breakdown, repair, servicing, loss or destruction. This common clause is primarily designed for the benefit of the insured. Its purpose is not to defeat liability but to reasonably define coverage by limiting the insurer's risk to one operating vehicle at a time for a single premium. 12 Couch on Insurance 2nd Ed. § 45:219, p. 261. It should be so construed. To qualify for coverage an insured:

(1) Must be temporarily using a substitute vehicle;

(2) The substitute vehicle must be owned by someone other than the named insured; and

(3) The insured automobile must have been withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

■ The word "temporarily" relates to and is a restriction on the use of the substitute vehicle. The policy does not similarly require that the insured vehicle be "temporarily" withdrawn from normal use. This phase of the insurance contract is without time limit. Harte v. Peerless Insurance Company, 123 Vt. 120, 183 A.2d 223. Furthermore, the policy does not require the replacement, or an intention to replace, the insured vehicle in use after being withdrawn from normal use. A breakdown, repair, loss or destruction might be permanent in nature. Obviously, there would never be an intention to replace in use an automobile damaged beyond repair, as in the present case, or one that has been lost or destroyed. Nevertheless, the substitute automobile clause is clearly designed to extend coverage to an insured in those cases during the remainder of the policy period. The insured is thereby afforded protection paid for and the insurer's risk is confined to one operating vehicle at a time.

■ This conclusion is not in accord with the view expressed by this court in Munson v. Speck, 76 S.D. 599, 83 N.W.2d 479,

which case is relied upon by the defendant insurer and apparently followed by the trial court in denying coverage to plaintiff. In the Munson case the insured had abandoned a financed used automobile because he couldn't pay for it. Coverage was denied because the insured automobile had not been withdrawn from normal use because of breakdown, repair or servicing. This was decisive. However, the court went on to say "The word 'temporarily' read in connection with the whole of the policy provision indicates that it is intended the described car is to again be placed in use by the insured". This adds a requirement not found in the insuring agreement and relates the word "temporarily" to the insured vehicle rather than to the use of the substitute automobile. In refusing to follow this aspect of Munson v. Speck the Vermont court in Harte v. Peerless Insurance Company, 123 Vt. 120, 183 A.2d 223, observed that "The insurance contract itself fixes no limit in time during which the temporary extended coverage is to be effective * * * we cannot say that the substitute protection provided in the insurance contract should be forfeited as a matter of law solely on the strength of the fact that the repairs to the insured vehicle had not been accomplished in the three-month interval that elapsed after it had been withdrawn from normal use." See also Continental Cas. Co. v. Ocean Accident & Guar. Corp., Del., 209 A.2d 743 and McKee v. Exchange Insurance Association, 270 Ala. 518, 120 So.2d 690, in which the Munson case is factually distinguished and not followed. To avoid any possible conflict and future misunderstanding as to the meaning of this portion of Munson v. Speck the same is expressly overruled.

 The fact plaintiff drove the Chevrolet on occasion after it was damaged does not defeat coverage. He used the car in its damaged and unrepairable condition only when he "just had to". The policy does not require the insured vehicle to be withdrawn from "all" use. It merely requires withdrawal from "normal" use. All-state Ins. Co. v. Roberts, 156 Cal.App.2d 755, 320 P.2d 90; Canal Insurance Company v. Paul, Tenn.App., 369 S.W.2d 393. This means a withdrawal from ordinary, customary or usual use. Mid-Continent Casualty Company v. West, Okl., 351 P.2d 398.

██ ██ The undisputed facts show plaintiff's Chevrolet was covered by a policy of liability insurance issued by the defendant insurer. The car had been damaged beyond repair by a hit and run driver, was rarely used thereafter and was eventually sold for junk. It could not be used in the usual or customary manner because it had been withdrawn from normal use by reason of its need for repair, breakdown, loss or destruction. Furthermore, it was not in use at the time of the accident. "An overt act of withdrawal by the insured is not necessary—that is, to withdraw the insured automobile from normal use it is not necessary that it be in a garage or a service station." 7 Am.Jur.2d, Automobile Insurance, § 104, p. 413. The extensive and unrepairable damages resulting from the hit and run accident automatically withdrew the insured Chevrolet from normal use. Therefore, at the time of the accident with the Clarks we conclude the panel truck was being used by plaintiff as a temporary substitute automobile under and in accordance with the terms of the substitute automobile provision of his policy on the Chevrolet.

Reversed.

HOMEYER, P. J., BIEGELMEIER, J., and BANDY, Circuit Judge, concur.

ROBERTS, J., dissents.

BANDY, Circuit Judge, sitting for RENTTO, J., not participating.

ROBERTS, Judge (dissenting).

I am unable for several reasons to concur in the majority decision.

A policy of liability insurance was issued in the name of Douglas Edwin Nelson to cover a vehicle described as a 1953 Chevrolet Bel Aire sedan. Plaintiff insured was driving a panel truck when he was involved in an accident. The trial court decreed that there was no coverage. The ground on which the majority base their decision and reversal is that the panel truck

at the time of the accident was being used by plaintiff as a temporary substitute automobile under the terms of the policy insuring the Chevrolet sedan.

A "temporary substitute automobile" is defined in the policy as "any automobile * * * not owned by the named insured, while **temporarily** used as a substitute for the owned automobile * * * **when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.**" (Emphasis supplied). This language makes it clear that a temporary substitute automobile is one temporarily used by insured in the place of the automobile described in the policy when the insured automobile is withdrawn from its customary use because of its "breakdown" or other reason stated in the substitution provisions. Iowa Mutual Insurance Company v. Addy, 132 Colo. 202, 286 P.2d 622; Erickson v. Genisot, 322 Mich. 303, 33 N.W.2d 803; Lewis v. Bradley, 7 Wis.2d 586, 97 N.W.2d 408; Harte v. Peerless Insurance Company, 123 Vt. 120, 183 A.2d 223; Grundeen v. United States Fidelity & Guaranty Co., 8 Cir., 238 F.2d 750; Atlantic Insurance Company v. Gonzalez, Tex.Civ.App. 358 S.W.2d 716; Annot., 34 A.L.R.2d 933. For example, in Iowa Mutual Insurance Company v. Addy, supra, it was held that where the insured automobile was low on gasoline and had heavy snow chains on the tires there was no breakdown and the car which was used was not a substitute for the named automobile.

The provisions of the policy quoted are unquestionably as stated in the majority opinion designed for the benefit of the insured and not to defeat liability. However, the risk is not to be increased by construction beyond that contemplated. The views of the court in Gabrelcik v. National Indemnity Company, 269 Minn. 445, 131 N.W.2d 534, considering the same temporary substitute provisions, are here apropos: "The insurance contract represents the entire agreement between the parties. When the language of the policy is unambiguous, courts are not at liberty to use a process of judicial construction to graft into the plain language of a policy an intention to afford coverage when no such intention appears from the language of the policy or otherwise. Any construction of the policy must do no more than give effect to the plain meaning of the language."

The trial court found that the "Chevrolet having been damaged about three months prior thereto and plaintiff did not intend to repair it, the same not being worth repairing, and said Chevrolet was not out of use temporarily for repair or servicing nor was it lost or destroyed, and it was not temporarily withdrawn from normal use because of breakdown". The trial court applying the interpretation of the same substitution provisions in Munson v. Speck, 76 S.D. 599, 83 N.W.2d 479, concluded that because the Chevrolet had been abandoned the truck was not being used at the time of the accident as a "temporary substitute automobile".

The present case is not here reviewable de novo, but merely upon assignments of error for the correction of errors at law. The factual issues were for the trial court to determine. This court must indulge all reasonable intendments in support of the judgment including facts that may be fairly inferable from those stated in the findings.

In Munson v. Speck, supra, the insured automobile had not been destroyed as is the fact in this case, but the damaged car had been abandoned and turned over by plaintiff to the conditional seller. This court, speaking through Judge Rudolph, unanimously held:

"Under these circumstances we do not believe the car was 'temporarily used as the substitute' for the Studebaker within the meaning of the policy. No one would seriously contend if Speck (insured) had sold the Studebaker on March 30, that a car driven by him thirty days later would be driven as a 'substitute' for the Studebaker as that term is used in the policy. We do not believe the present facts any more nearly reach the situation intended to be covered by this policy provision than the actual sale of the car. The word 'temporarily' read in connection with the whole of the policy provision indicates that it is intended the described car is to again be placed in use by the insured.

"This provision, we are convinced, was not intended to cover a car used by the insured after the described

car was sold or abandoned with the intention of never using it again as disclosed by the facts presently before us.

\* \* \* \* \* \*

"The facts in this case, as above stated, disclose without question that while Speck's car had been withdrawn from use so far as he was concerned, he had, at the time in question, abandoned it. If his car had been capable of use at the time of the accident (which it might have been in so far as this record reveals) it would not 'have been in use at the time and in the circumstances involved', because he had abandoned it, he was 'through with it'. The car being driven at the time, in other words, was not being driven as a 'substitute'."

The majority reads meaning into the opinion in the Munson case that is not there. The word "temporarily" unquestionably relates to and qualifies the use of a substitute automobile and there is no suggestion in the opinion therein to the contrary. It does not add a requirement not found in the insuring agreement. The word "temporarily" is the antonym of "permanently". The substitution may be made only where the insured vehicle becomes unavailable for use because of any one of the specified reasons, and the coverage does not continue after the insured vehicle again becomes available for use. The word in question was considered important in construction of the terms of the contract and for the purpose of determining the intent of the parties.

Turning now to the authorities cited, I find no expression of disagreement with the Munson decision. It has been distinguished on a factual basis as illustrated in the case of Harte v. Peerless Insurance Company, 123 Vt. 120, 183 A.2d 223, holding:

"**Clearly, the object of the substitution clause is to afford a temporary insurance expedient to protect the insured's operation of a borrowed vehicle during the period of repair until the automobile named in the policy is restored to normal use.** The provision is not to be unreason-

ably extended to materially increase the risk contemplated by the insurer. Neither is it to be narrowly applied against the insured for the clause was designed for his protection. * * *

"The findings report that the vehicle named in the contract was 'out of commission' and had remained parked at the owner's home for some two months before the accident occurred. * * * It is argued that the temporary aspect of the whole event had expired, citing Munson v. Speck, 76 S.D. 599, 83 N.W.2d 479.

**"* * * In the last analysis the intention of the insured in this regard was a factual issue for the chancellor to determine."** (Emphasis supplied).

We have in the present case a determination of the intention of the insured. He abandoned the insured Chevrolet and did not intend to return it again to normal use.

The automobile covered by the policy herein was damaged and not withdrawn because of "loss or destruction". That is the unchallenged finding of the trial court. The factual issue then was whether the Chevrolet was withdrawn from its normal use by reason of "breakdown" or for "repairs" or "servicing". I disagree with the conclusion of the majority that in case of "breakdown" insured may elect not to repair; that the substitution clause is designed in such instance to extend coverage to insured during the remainder of the policy period. The policy makes it clear that its purpose is to extend coverage "temporarily", without payment of additional premium, to protect the insured using another automobile in the place of the insured automobile withdrawn from normal use for a reason stated in the policy. A destroyed automobile or one which will not run withdraws itself. The automobile here was still usable. If the policy was designed as construed by the majority to extend coverage during the remainder of the policy period, even though insured did not intend to repair and return it again to normal use, he could on occasion have used the Chevrolet in its damaged condition or a substitute car. This is a strained construction

of the policy and is "tantamount", as stated by the Colorado court in Iowa Mutual Insurance Company v. Addy, supra, "to holding that for one premium the insured could have the benefit of coverage on two automobiles and the insurers risk thereby doubled."

The policy is intended as stated to protect the insured in the operation of a substituted automobile during the period of repair until the automobile named in the policy is restored to normal use. Munson v. Speck, supra; Harte v. Peerless Insurance Company, supra. Under the present construction of the substitution provisions, an insured may use a borrowed automobile when he believes the automobile named in the policy is not in good running order. Plaintiff testified that he drove the Chevrolet on occasion. Coverage under such circumstances is clearly a mistaken construction of the substitution provisions as stated by the court in Erickson v. Genisot, supra, where insured borrowed an automobile to make a trip of some 50 miles because he considered the insured vehicle not in condition to travel that far. See also Atlantic Insurance Company v. Gonzalez, supra.

In its facts as found by the trial court and the applicable law, the present case does not differ from Munson v. Speck, supra. I would adhere to the sound and logical reasoning therein and affirm.