FLECKENSTEIN *v.* CITIZENS' MUTUAL AUTOMOBILE INSURANCE COMPANY.

1. Automobiles—Certificate of Title—Delivery—Possession.
   When a properly assigned certificate of title of a motor vehicle is delivered by the owner to the vendee in possession, title passes, notwithstanding there is delay in forwarding the certificate to the secretary of State.

2. Same—Return to Seller—Transfer of Certificate of Title.
   Legal ownership of an automobile may not be returned to seller without proper transfer of certificate of title (CL 1948, § 256.103).

3. Same—Certificate of Title—Retransfer to Original Transferor.
   Where minor son purchased a car with title taken in name of plaintiff, and after son reached majority, title was properly assigned to son although new title was not issued to him because of his failure to execute application therefor properly but the title was not retransferred to the father, the latter was not then the owner of the car (CL 1948, § 256.-103).

---

References for Points in Headnotes
[4–8] 5 Am Jur, Automobiles, §§ 507, 519 (Supp).
[4–8] Insurance covering damage to automobile by accident or collision.   35 ALR 1031; 40 ALR 999; 42 ALR 1130; 54 ALR 1445.
[4–8] Automobile insurance:   Construction and effect of provision excluding coverage of other automobile owned, hired, or regularly used by insured or member of his household.   173 ALR 901.
[8, 9] 19 Am Jur, Estoppel, §§ 33 *et seq.*, 83–85.
[11] 5 Am Jur, Automobiles, § 99.

4. INSURANCE—AUTOMOBILE—CONSTRUCTION OF POLICY—TEMPORARY USE.

> In construing the expression "temporary use" in extended coverage clause in automobile insurance policy, the meaning most favorable to the insured must be accepted.

5. WORDS AND PHRASES—TEMPORARY—PERMANENT.

> As commonly accepted "temporary" is an antonym of "permanent."

6. INSURANCE — AUTOMOBILES — EXTENDED COVERAGE — TEMPORARY USE OF SUBSTITUTE CAR—QUESTION FOR JURY.

> Where plaintiff father's insured car was out of use because motor was broken down and, pending installation of new motor which had been ordered before defendant issued automobile insurance policy under which action was brought, plaintiff used car owned by unmarried son, whether such use was temporary or permanent within meaning of extended coverage clause as to substitute vehicles was at least a question for the jury.

7. WORDS AND PHRASES—TEMPORARY—PERMANENT.

> The word "temporary" has no fixed meaning in the sense that it designates any fixed period of time but is a word used in contradistinction to "permanent."

8. INSURANCE—AUTOMOBILES—ESTOPPEL AS TO OWNERSHIP—SUBSTITUTE VEHICLES.

> Fact that substitute car and its certificate of title were left with plaintiff by his unmarried son while latter was in military service and afterward and that plaintiff had twice misrepresented himself as its owner incident to obtaining license for driving it on the highways would not result in estoppel, whereby plaintiff could not disavow ownership of the substitute vehicle, which defendant insurer under automobile insurance policy, covering plaintiff's own car but containing coverage clause for use of substitute vehicles, could assert in action brought under the policy.

9. ESTOPPEL—DEFINITION.

> An estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

10. AUTOMOBILES—STATUTES—OWNER.

Definition of "owner" in statute requiring registration of motor vehicles applies only within the purview of the statute in which it is embodied and cannot be applied to transactions between private parties (CL 1948, § 256.1).

11. SAME—OWNER—STATUTES.

Insured who shared use of automobile, owned by his unmarried son, with others in the family relation, was not an "owner" thereof as term is used in statute requiring registration of motor vehicles (CL 1948, § 256.1).

Appeal from Newaygo; Pugsley (Earl C.), J. Submitted October 13, 1949. (Docket No. 28, Calendar No. 44,524.) Decided January 9, 1950.

Assumpsit by Leonard Fleckenstein against the Citizens' Mutual Automobile Insurance Company on a casualty insurance policy. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and remanded.

*J. Donald Murphy,* for plaintiff.

*Van Winkle & Van Winkle* and *Reber & Reber,* for defendant.

NORTH, J. This is a suit brought on an automobile insurance policy. At the close of plaintiff's proofs defendant's motion for a directed verdict was granted. From the judgment entered thereon plaintiff has appealed.

The outcome of this litigation hinges on the right of plaintiff, under the circumstances of this case, to recover under a policy provision which reads as follows:

"EXTENDED INSURING AGREEMENTS * * * 2. Temporary Use of Substitute Automobile. While an automobile owned in full or in part by the named assured is withdrawn from normal use because of its

breakdown, repair, servicing, loss or destruction, such insurance as is afforded by this policy for bodily injury liability, property damage liability, and for medical payments with respect to such automobile applies with respect to another automobile not so owned while temporarily used as a substitute for such automobile. This insuring agreement does not cover as an assured the owner of the substitute automobile or any employee of such owner."

Plaintiff's son, Delmar Fleckenstein, in 1941, purchased a Chevrolet automobile. At the time Delmar was not yet of age and for that reason title to the Chevrolet was taken in plaintiff's name. Delmar became of age October 11, 1941. Thereafter and on August 3, 1942, plaintiff assigned the certificate of title to the Chevrolet to the son Delmar. There is no dispute in the testimony as to the regularity of the execution of the assignment of the certificate of title, nor is it controverted that the certificate so assigned was delivered by plaintiff to Delmar approximately a week after it was signed by plaintiff. The Chevrolet was then in the possession of Delmar. Promptly after receiving the assigned title, Delmar took it to the branch office of the secretary of State in White Cloud, Michigan, paid the branch manager the fee chargeable for a new certificate of title, and the branch manager forwarded the same to the secretary of State at Lansing. Delmar had not signed the provision printed on the back of the certificate which is a request that a new title be issued to the subscriber, the transferee. Because of this defect the secretary of State's office returned the certificate of title to Delmar. Shortly after its receipt Delmar was inducted into the armed forces and continued therein until his discharge in December, 1945. Nothing was done in the meantime relative to securing a new certificate of title in Delmar's name, and the certificate of title which plaintiff had assigned

and delivered to his son seemingly remained in the father's home while the son, who was unmarried, was in the service; and the Chevrolet automobile was also left on the father's premises. However, no license was issued for the operation of this car for either the year 1943, 1944, or 1945.

Prior to August 9, 1946, plaintiff owned a Studebaker automobile which was insured in the defendant company. On or about August 9, 1946, an agent of the company approached plaintiff relative to a renewal or to taking a new policy on the Studebaker automobile for the ensuing year. Plaintiff had not driven the Studebaker since in May, 1946. He advised the agent that the motor in plaintiff's Studebaker had completely broken down and that the car was out of use. But a new motor had been ordered for the Studebaker car, which motor was delivered the latter part of August, 1946, and its installation by a garage man was completed October 5, 1946.

Because of the Studebaker having been out of commission plaintiff had been driving the Chevrolet car, with the license in his own name, from May, 1946, to September 24, 1946, on which date plaintiff, while driving the Chevrolet automobile, had an accident which resulted in an injured party obtaining a judgment against plaintiff herein for bodily injuries in the amount of $5,000. It is because of this judgment having been obtained against plaintiff that he seeks to recover under the provision hereinbefore quoted of the policy issued by defendant covering plaintiff's Studebaker automobile.

In support of its motion for a directed verdict defendant contended it appeared as a matter of law that plaintiff was the owner of both the Studebaker automobile and the Chevrolet, and therefore he could not recover under the quoted policy provision which only extended the coverage "to another automobile not so owned" by the insured. Defendant stresses

the fact that a new certificate of title was never issued to the son Delmar; that plaintiff had the Chevrolet in his possession, and that in 1946 plaintiff (representing himself to be the owner) took out 2 one-half year licenses for the Chevrolet, one in May and one in September. Plaintiff's position is stated in his brief as follows:

"The question of whether there had been an assignment and delivery of the certificate of title to the Chevrolet automobile from the plaintiff to Delmar Fleckenstein was a question of fact which the court should have submitted to the jury. It was for the jury and not the court to say whether or not the plaintiff was the owner of the Chevrolet."

Defendant's contention that the record discloses as a matter of law that plaintiff was the owner of the Chevrolet is not tenable. The law is definitely settled in this jurisdiction that when a properly assigned certificate of title is delivered by the owner to the vendee in possession, title passes.

"Title to motor vehicle passes on delivery of properly executed assignment of certificate of title, notwithstanding there is delay in forwarding certificate to secretary of State." *Kruse* v. *Carey* (syllabus), 259 Mich 157.

"Delivery by seller of automobile of assigned certificate of title direct to branch office of secretary of State, accompanied by buyer's application for certificate of title, with payment of statutory fee, was substantial compliance with statute requiring transferee to present such certificate, assigned, to secretary of State." *Schomberg* v. *Bayly* (syllabus), 259 Mich 135.

"Title to motor vehicle passes from seller to purchaser when former delivers to latter assignment of certificate of title, and not before, and therefore purchaser who has not received assignment of certificate of title is not 'owner,' although he may be in

possession of car." *Kimber* v. *Eding* (syllabus), 262 Mich 670.

"Under CL 1929, § 4660 [CL 1948, § 256.103 (Stat Ann § 9.1474)], legal ownership of automobile may not be returned to seller without proper transfer of certificate of title." *Kelly* v. *Lofts* (syllabus), 253 Mich 552.

If the testimony in behalf of plaintiff is accepted, in 1942 plaintiff transferred the title of the Chevrolet automobile to his son Delmar. There is nothing in this record indicating that such title was ever retransferred to plaintiff. It follows that plaintiff was not the owner of the Chevrolet automobile at the time of the 1946 accident.

In support of its motion for a directed verdict defendant also urged nonliability because it claimed and now claims that it is disclosed by the record as a matter of law the Chevrolet was not being *"temporarily"* used as a "substitute" by plaintiff in place of his Studebaker. In construing the expression "temporary use" as employed in defendant's insurance policy, the meaning most favorable to plaintiff must be accepted. *Pastucha* v. *Roth*, 290 Mich 1. As commonly accepted "temporary" is an antonym of "permanent." Plaintiff's use of the Chevrolet was either temporary or permanent. The record would not justify conclusion as a matter of law that plaintiff's use or his intended use of the Chevrolet was permanent. The policy on which this suit is brought was issued August 9, 1946, and the accident involving the Chevrolet occurred September 24, 1946. A new motor for the Studebaker had been ordered in May, 1946. There was some delay in delivery of this motor and further delay at the garage incident to its installation, which was completed October 5, 1946. Where, as in the instant case, the uncontradicted testimony tends to disclose only temporary use of the substituted automobile,

it might well be held such as a matter of law by the trial court; but in the instant case plaintiff's position is thus stated in his brief:

"It, therefore, became a jury question of fact as to whether the use being made by the plaintiff of the Chevrolet, owned by the plaintiff's son, was a temporary use in view of all of the facts and circumstances then existing."

In *McManus* v. *Home Insurance Co.*, 201 Wis 164 (229 NW 537), which involved the right of plaintiff to recover for fire loss of certain blankets while "on or temporarily off the premises" of the insured, verdict was directed for the insured. On appeal the supreme court in its opinion said:

"The word 'temporary' has no fixed meaning in the sense that it designates any fixed period of time. It is a word used in contradistinction to permanent. * * * There is no doubt that the insured removed these blankets to the logging camps at the beginning of the logging season with the intention of returning them to his farm after the logging season was over. This clearly negatives the idea that the removal was permanent. If not permanent, it must have been temporary."

In the particular just above noted the holding in the *McManus Case* was followed in a later Wisconsin decision. See *Lewis* v. *Insurance Co. of North America*, 203 Wis 324 (234 NW 499). Appellee's contention in the instant case that it appears as a matter of law plaintiff's use of the Chevrolet was not a temporary use, cannot be sustained.

Further in support of its motion for a directed verdict and as against plaintiff's right to disavow ownership of the Chevrolet, defendant urges estoppel in the following particulars:

"6. Because plaintiff by keeping possession of the certificate of title to said Chevrolet automobile is

now estopped from claiming that he was not the owner thereof.

"7. Because plaintiff by keeping possession of said Chevrolet automobile through all of the years is now estopped from claiming that he was not the owner thereof.

"8. Because plaintiff by procuring two licenses— half year term— for the year 1946, licensing said Chevrolet automobile in his name and thereby presenting the certificate of title to the licensing officer and representing himself to be the owner of the automobile is now estopped from making any other or different claim."

It must be borne in mind that this suit is by plaintiff against the defendant insurance company. So the issue is this: What did plaintiff do or fail to do which would work estoppel as between him and the defendant? We cannot find that the fact that while Delmar was in the service he left the Chevrolet certificate of title which had been assigned and delivered to him by his father in the latter's home or possession, or that the Chevrolet during the same period remained on the father's premises, or that plaintiff twice in 1946 misrepresented himself as owner of the Chevrolet incident to obtaining license for its being driven on the highways, resulted in an estoppel which defendant can assert in this suit. See *Engel* v. *State Mutual Rodded Fire Ins. Co.,* 281 Mich 520, and *Schudlich* v. *Yankee,* 272 Mich 482. In the latter case we quoted from *Kole* v. *Lampen,* 191 Mich 156, the following:

" 'It is a familiar rule of law that an estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is

permitted to deny the existence of such facts. 16 Cyc, pp 722, 723. See, also, Bigelow on Estoppel (5th ed), p 570; *Dann* v. *Cudney*, 13 Mich 239 (87 Am Dec 755); 11 Am & Eng Enc Law (2d ed), pp 427, 428; 16 Cyc, pp 759, 769.' "

There is no merit in defendant's contention that plaintiff, under the record in this case, was estopped from disavowing ownership of the Chevrolet automobile.

We are not unmindful of defendant's contention that by the very terms of the statute plaintiff, under the circumstances of this case, as a matter of law became the owner of the Chevrolet automobile. As pointed out by defendant CL 1948, § 256.1 (Stat Ann 1947 Cum Supp § 9.1431) in defining certain terms applicable to the law requiring registration of motor vehicles provides:

"(g) The term 'owner' as used in this act shall include any person, firm, association or corporation owning or renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period greater than 30 days."

But we consider this statutory definition applicable only within the purview of the statute in which it is embodied. Obviously it could not be applied to transactions between private parties, and it may be added, it does not appear from the record in the instant case that plaintiff, after he assigned the title to the Chevrolet to his son, either owned or rented the Chevrolet automobile or that he had the exclusive use thereof. On the contrary there is uncontroverted testimony that others in the family relation used the Chevrolet.

Our conclusion is that the trial judge was in error in directing a verdict in favor of defendant. The judgment entered thereon will be vacated and the case remanded to the circuit court for further pro-

ceedings therein.   Appellant will have costs of this
Court.

BOYLES, C. J., and REID, DETHMERS, BUTZEL, CARR,
BUSHNELL, and SHARPE, JJ., concurred.