# ST. PAUL FIRE & MARINE INSURANCE COMPANY v. WESLEY NYQUIST AND OTHERS.

175 N. W. (2d) 494.

February 13, 1970—No. 41669.

*Hammer, Weyl, Halverson & Watters* and *Gerald J. Brown,* for appellant.

*Milan S. Balach,* for respondents Nyquist.

*MacDonald & Munger,* for respondents Watson and Carlberg.

*Harper, Eaton & Gustafson* and *Galen C. Wilson,* for respondents Swenson.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ. Consideration and decision based on briefs by entire court en banc.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a declaratory judgment that an insurance policy issued by plaintiff company covered defendant Wesley Nyquist for an accident on April 17, 1967, when he was driving a 1960 Chevrolet owned by his mother, defendant Ellen Nyquist.

The insurance policy involved was issued to Wesley Nyquist by plaintiff, St. Paul Fire & Marine Insurance Company. Defendants claim that Mrs. Nyquist's 1960 Chevrolet should be covered under the policy as a temporary substitute vehicle, a replacement vehicle, or a non-owned vehicle not furnished for defendant Wesley Nyquist's regular use. Plaintiff denies liability under the policy. In view of our disposition of the temporary-substitute-vehicle issue, we do not reach the other two policy provisions on which defendant relies.

The policy in question was in effect from November 15, 1966, to November 15, 1967, and listed a 1958 Chevrolet as the owned automobile. Defendant Wesley Nyquist sold the 1958 Chevrolet on March 9, 1967. Nyquist, who operates an auto body shop, purchased a 1961 Chevrolet in an inoperable condition in November 1966. He did not complete repairs rendering it operable until August 18, 1967. Between the sale of the 1958 Chevrolet and the repair of the 1961 Chevrolet (March 9, 1967 to August 18, 1967), Wesley drove his mother's 1960 Chevrolet. Wesley had also driven the 1960 Chevrolet occasionally during the period from November 1966 to March 9, 1967, when his 1958 Chevrolet would not start. His mother's car was sold August 17, 1967.

Plaintiff's policy covers any passenger automobile which replaces the "owned automobile" described in the policy and any "temporary substitute automobile," which is defined as—

"* * * any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

■ When construing an insurance policy, this court is cognizant of the public interest in having automobiles covered by liability insurance, and construes any ambiguities in the policy against the insurer since the insurer chose the language.[1] In Gabrelcik v. National Ind. Co. 269 Minn. 445, 131 N. W. (2d) 534, we construed a temporary-substitute-automobile clause similar to the one in this case and said, "We recognize that the overall purpose of a substituted-vehicle clause in an insurance policy is to benefit the insured and that the clause is to be construed liberally in favor of the insured." 269 Minn. 447, 131 N. W. (2d) 535. In Gabrelcik the court denied coverage under the policy. However, that case can easily be distinguished from the present case in that the policy in Gabrelcik stated that a vehicle owned by one's spouse could not qualify as a temporary substitute vehicle, and we held that a car owned by a husband's used-car business came within this exception. We said there that we could not avoid the unambiguous language of the contract, but here we have no such unambiguous language.

■ In the replacement-automobile cases the courts are usually willing to allow coverage under the policy as long as there is only one operable car. It makes no difference that the replacement car is purchased before the replaced car is sold as long as the replaced car is sold or is not operable at the time of the accident.

---

[1] E. g., Quaderer v. Integrity Mutual Ins. Co. 263 Minn. 383, 387, 116 N. W. (2d) 605, 608.

In this way other users of the highways are protected and the insurance company's liability is limited to the operation of one car by the insured. See, Nationwide Mutual Ins. Co. v. Mast, 52 Del. 127, 153 A. (2d) 893; Maryland Ind. & Fire Ins. Exch. v. Steers, 221 Md. 380, 157 A. (2d) 803; Merchants Mutual Cas. Co. v. Lambert, 90 N. H. 507, 11 A. (2d) 361, 127 A. L. R. 483; Filaseta v. Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co. 209 Pa. Super. 322, 228 A. (2d) 18; National Ind. Co. v. Giampapa, 65 Wash. (2d) 627, 399 P. (2d) 81; Annotation, 34 A. L. R. (2d) 936.

In those cases where coverage was denied, usually either required notice was not given to the insurance company or the first car was retained at the time of the accident. See, Mitcham v. Travelers Ind. Co. (4 Cir.) 127 F. (2d) 27; Brown v. State Farm Mutual Auto. Ins. Co. (Ky.) 306 S. W. (2d) 836.

Fleming v. Nationwide Mutual Ins. Co. (4 Cir.) 383 F. (2d) 145, is more difficult to distinguish from the case at hand. However, there is really no evidence that before defendant Wesley Nyquist sold his first car he was operating two cars at the same time, as was the defendant in Fleming. Defendants here claim that prior to selling his 1958 Chevrolet Wesley operated his mother's 1960 Chevrolet only when the 1958 car would not start.

The automatic-replacement and temporary-substitute provisions are part of the policy's general scheme to provide coverage whenever the insured is using a car other than the described vehicle, as long as he is not also using the described vehicle and as long as he does not have two operable cars at his disposal. The purpose of these provisions is thus to see that the company is not providing coverage for two vehicles for the price of one and, as long as this is not true, to allow the insured to freely substitute and replace vehicles.

In the present case, defendant Wesley Nyquist was using only one car at a time. He was not attempting to insure two cars for the price of one. This is especially true at the time of the accident, since his mother's 1960 Chevrolet was the only operable

car at his disposal at that time. He had sold his 1958 Chevrolet and had not yet repaired his 1961 Chevrolet. He was using his mother's car as a temporary substitute. At that time the 1961 Chevrolet had replaced the 1958 Chevrolet as the owned vehicle covered by the policy by virtue of the automatic-replacement provision. The 1961 Chevrolet was withdrawn from normal use "because of its * * * repair." Consequently, the 1960 Chevrolet was covered under the policy as a temporary substitute for the 1961 Chevrolet.

The policy does not state who is required to withdraw the owned vehicle from normal use, and we see no reason to read into the policy the requirement that the owner must do so. Similarly, there is no requirement as to when the automobile must be withdrawn from use, and we again see no reason to read such a requirement into the policy. The overall intent of the policy, to allow the insured to substitute and replace vehicles freely as long as he is using only one car at a time, is carried out by allowing Wesley to substitute his mother's 1960 car for his inoperable 1961 car, regardless of the fact that he did not withdraw it from use. This construction of the policy provides other drivers the protection they need and gives the insured the protection he paid for. The plaintiff can have no complaint as long as only one car is covered at a time.

There is a requirement in the policy that the insured acquire ownership of the replacement vehicle during the policy period to bring the vehicle under the terms of the automatic-replacement provision. It is not clear if defendant Wesley Nyquist acquired possession of the 1961 car before the policy went into effect on November 15, 1966. If he did take possession before November 15, 1966, it was such a short time before as to make no difference. Also, Wesley paid for the car under an unusual arrangement with an automobile dealer—applying his charges on repair work done for the dealer to the purchase price of the 1961 car. Since this arrangement does not appear to have been worked out before November 15, 1966, and since Wesley did not

pay for the car before that date, the trial court's finding that he did not acquire ownership before the policy went into effect is supported by the evidence. In addition, Wesley did not register the 1961 car in his name until sometime in 1967.

■ Plaintiff also contends that the 1960 Chevrolet could not be a temporary substitute vehicle since it was used for an extended period. However, the length of use is not controlling. The car did not belong to Wesley and he was using it only temporarily until he repaired his 1961 car or purchased another car. The Supreme Court of Michigan considered this issue in Fleckenstein v. Citizens Mutual Auto. Ins. Co. 326 Mich. 591, 597, 40 N. W. (2d) 733, 736 (where the defendant apparently had been using the temporary substitute vehicle for 4 months):

"'* * * As commonly accepted 'temporary' is an antonym of 'permanent.' Plaintiff's use of the Chevrolet was either temporary or permanent. * * * [T]he uncontradicted testimony tends to disclose only temporary use of the substituted automobile."

See, De Marco v. Lumbermen's Mutual Cas. Co. (La. App.) 153 So. (2d) 594; Little v. Safeguard Ins. Co. (La. App.) 137 So. (2d) 415. We agree with the Michigan court that a person other than the owner may use an automobile "temporarily" for several months so long as the owner does not view such use as permanent.

The judgment is affirmed.

KNUTSON, CHIEF JUSTICE (dissenting).

I cannot agree with this opinion. I see no ambiguity in the language of the policy. It covers a temporary, substituted automobile, "while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

It seems to me that this language is as clear as it could be. Under it, what car was the mother's car used as a temporary sub-

stitute for? It could not be a substitute for the 1958 Chevrolet, because that had been sold in March. It could not be a temporary substitute for the 1961 Chevrolet, because that was never in operable condition during the time involved. The majority seem to proceed on the theory that as long as only one car was in use liability existed, even though it was not covered by the policy. In Simon v. Milwaukee Auto. Mutual Ins. Co. 262 Minn. 378, 385, 115 N. W. (2d) 40, 45, we said:

"* * * Where the insurance contract is unambiguous, the language used must be given its ordinary and usual meaning the same as any other contract, and we have no more right to redraft an insurance contract under the guise of strict construction to reach a result that we would prefer than we have to redraft any other contract."

We have no more right to redraft the contract to arrive at a result we desire under the guise of liberal construction than we have under the guise of strict construction. We have frequently said that insurance contracts are like any other contracts—the parties have the right to contract as they see fit. It is not our function to rewrite insurance policies so as to provide coverage which under the clear terms of the policy the parties have not provided for.

I therefore respectfully dissent.

NELSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Chief Justice Knutson.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.