[Sac. No. 7944. In Bank. Apr. 3, 1973.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff and Appellant, v.
BILLY MILTON JOHNSTON et al., Defendants and Respondents.

## COUNSEL

Bledsoe, Smith, Cathcart, Johnson & Rogers and Robert A. Seligson for Plaintiff and Appellant.

Raymond E. Bright, John J. Healy, Warren A. Staiger and Hutchins, Staiger & Preston for Defendants and Respondents.

## OPINION

**McCOMB, J.**—This is an appeal from a declaratory judgment that an insurance policy issued by plaintiff covered defendant Billy Milton Johnston for an accident on March 9, 1968, when he was driving a 1964 Chevrolet Impala. The trial court found coverage under the "temporary substitute automobile" provision of the policy. The record sustains the propriety of that ruling, and other points raised by the parties need not be discussed.

*Facts:* The facts are not essentially disputed. On March 13, 1967, plaintiff issued a policy to Milton H. Johnston covering a 1957 Chevrolet, and this policy was in full force and effect on the date of the accident here involved. Milton was the registered owner of the car and paid the premiums to plaintiff. However, the car was actually purchased for the use of his son Billy under an arrangement whereby Billy was to pay for the car, its upkeep, and insurance, while the car would remain in Milton's name. Billy was then under 18 years of age and was living with his parents in their Lodi home.

On September 30, 1967, shortly after he was 18 years old, Billy

married and moved with his wife to Stockton. He took with him the 1957 car with the consent of his father that he would continue to use it as before when he was at his parents' home. In December 1967, the car became inoperable by reason of a frozen engine. Sometime in January 1968, Billy found a 1964 Chevrolet Impala suitable for the same use as the 1957 car. Billy purchased the 1964 Chevrolet with his father's approval, but this time the car was registered in Billy's name. Billy used the 1964 car for his driving needs the same as he had previously used the 1957 car, and he then sold the inoperable 1957 car. On March 9, 1968, while driving the 1964 car, Billy collided with another vehicle driven by John Mathew Shinn. Mr. Shinn was seriously injured, and his wife was killed. This tragic accident occurred four days before expiration of the policy period. Milton had not bought another car or cancelled his 1967 policy with its coverage provisions. On March 21, 1968, Billy went to plaintiff to inquire about future coverage for his 1964 car; and it was then that plaintiff learned of the March 9th accident, Billy's purchase of the 1964 car, and his sale of the 1957 car.

■ Question: *Did plaintiff's policy give defendant Billy Milton Johnston coverage for the subject accident?*

*Yes.* Plaintiff's policy provided coverage for the "owned automobile"—meaning the described vehicle and including a "temporary substitute automobile," which was defined as "an automobile not owned by the named insured or his spouse while temporarily used with the permission of the owner as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction." This clause commonly found in automobile liability insurance policies is primarily designed for the benefit of the insured. The purpose is not to defeat liability but reasonably to define coverage by limiting the insurer's risk to one operating vehicle at a time for a single premium. (12 Couch on Insurance (2d ed. 1964) § 45.219, p. 261.)

The policy itself fixes no limit in time during which the temporary extended coverage is to be effective. ■ "Temporary" is a word of much elasticity and considerable indefiniteness. (*Eastman* v. *Piper*, 68 Cal. App. 554 [229 P. 1002].) It has no fixed meaning in the sense that it designates any fixed period of time. (*Fleckenstein* v. *Citizens' Mut. Automobile Ins. Co.,* 326 Mich. 591 [40 N.W.2d 733, 736].) As commonly accepted, "temporary" is an antonym of "permanent." (*McKee* v. *Exchange Insurance Association,* 270 Ala. 518 [120 So.2d 690, 692].) Here, it is unclear whether plaintiff, in its use of the word "temporary," was attempting to put a time limitation on the use of the substitute automo-

bile. Any doubt as to its meaning must be resolved in accord with settled rules for interpreting an insurance contract. ■ As said in *Continental Cas. Co. v. Phoenix Constr. Co.,* 46 Cal.2d 423, at pages 437-438 [296 P.2d 801, 57 A.L.R.2d 914]: "It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. [Citations.] ■ If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. [Citation.] ■ If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the *doubt* relates to extent or *fact of coverage,* whether as to peril insured against [citations], the amount of liability [citations] or the person or persons protected [citations], *the language will be understood in its most inclusive, sense, for the benefit of the insured."* (Italics added.)

■ Plaintiff argues that since Billy purchased the 1964 car to use in place of the inoperable 1957 car, and then sold the 1957 car, his use of the 1964 car was not a "temporary substitute" but rather a "permanent replacement." In this regard, plaintiff would limit the coverage of the policy to operation of the substituted automobile during the period of repair until the automobile named in the policy is restored to use. But this argument adds a requirement not found in plaintiff's policy and relates the word "temporarily" to the insured car rather than to use of the substitute car. Certainly, plaintiff's policy contemplated that the insured car might never be restored to use during the term of the policy, for it provided for a "temporary substitute" when the insured car should be withdrawn from normal use because of "breakdown . . . loss or destruction." Here, the breakdown of the 1957 car apparently was such that it did not warrant repair but rather replacement for the remainder of the policy period. The important consideration for coverage under this provision of the policy was not the length of time of use but, rather, the purpose of the substitution and the substantial similarity between the use of the originally insured automobile and its substitute. In short, it is contemplated between the insurer and the insured that the *same* use of the *substitute vehicle* will be made as the one originally insured. (*Lewis v. Bradley,* 7 Wis.2d 586 [97 N.W.2d 408, 411-412].) Here, Billy used the 1964 car substitute for the same driving needs that he had used the 1957 car; Milton, his father, knew of the substitution and approved of its use for the same purposes as had applied with the 1957 car (*Hemphill v. Home Ins. Co.,* 121 Ga.App. 323, 458 [174 S.E.2d 251]); and the sale of the inoperable 1957 car would not preclude coverage for the 1964 car as a "temporary substitute automobile" for the remainder of the policy

period. (*Continental Cas. Co.* v. *Ocean Accident & Guar. Corp.*, 58 Del. 338 [209 A.2d 743].)

In *Nelson* v. *St. Paul Mercury Insurance Company,* 83 S.D. 32 [153 N.W.2d 397], where substantially the same "temporary substitute automobile" provision was considered, the Supreme Court of South Dakota said at page 400: "The word 'temporarily' relates to and is a restriction on the use of the substitute vehicle. The policy does not similarly require that the insured vehicle be 'temporarily' withdrawn from normal use. This phase of the insurance contract is without time limit. Harte v. Peerless Insurance Company, 123 Vt. 120, 183 A.2d 223. Furthermore, the policy does not require the replacement, or an intention to replace, the insured vehicle in use after being withdrawn from normal use. A breakdown, repair, loss or destruction might be permanent in nature. Obviously, there would never be an intention to replace in use an automobile damaged beyond repair, as in the present case, or one that has been lost or destroyed. Nevertheless, the substitute automobile clause is clearly designed to extend coverage to an insured in those cases during the remainder of the policy period. The insured is thereby afforded protection paid for and the insurer's risk is confined to one operating vehicle at a time."

Here, if plaintiff's policy, for which a premium was paid, be held to apply to any risk at all, it could apply only to the operation of the 1964 car operated by Billy when the accident occurred. No other risk existed at that time. Plaintiff's risk with respect to the use and operation of the 1957 car ceased with its breakdown and sale. (Veh. Code, § 5602.) An insurer charges a premium for assuming a risk covered by the policy. An insurer earns a premium only when there is a risk involved. (Ins. Code, § 481, subd. 1.) The risk to plaintiff under the policy was the same whether Billy operated the 1957 car or the later substituted 1964 car for the same basic purposes—only one operating vehicle was covered at the given time. The policy makes clear that its purpose was to extend coverage, without payment of additional premium, to a "temporary substitute automobile" used in place of the insured automobile withdrawn from normal use for reasons stated in the policy.

Plaintiff unavailingly relies on *Travelers Indemnity Co.* v. *American Cas. Co. of Reading, Pa.,* 226 F.Supp. 354, and *Hays* v. *Robertson,* 20 Utah 2d 186 [435 P.2d 925], for the proposition that a newly acquired car cannot qualify for coverage as a "temporary substitute automobile." The two cases actually concerned automobiles which were withdrawn from normal use for distinguishable reasons—repossession in *Travelers* and failure to make financial payments in *Hays,* not by reason of "breakdown,

repair, servicing, loss or destruction." Therefore, in neither case was the described car in the policy withdrawn from normal use for the specified reasons allowing for a "temporary substitute automobile," and consequently in neither case could the later acquired car qualify for coverage on that basis. Here, the 1957 Chevrolet, the described car, was unquestionably "withdrawn from normal use" by reason of its "breakdown," as specified in plaintiff's policy.

The applicable principle in the case of a "temporary substitute vehicle" is well stated by the Supreme Court of Minnesota in *St. Paul Fire & Marine Insurance Company* v. *Nyquist,* 286 Minn. 157, at pages 159-160 [175 N.W.2d 494]: "In the replacement-automobile cases the courts are usually willing to allow coverage under the policy as long as there is only one operable car. It makes no difference that the replacement car is purchased before the replaced car is sold as long as the replaced car is sold or is not operable at the time of the accident. In this way other users of the highways are protected and the insurance company's liability is limited to the operation of one car by the insured." [Citing numerous authorities.]

While plaintiff's introduction of the word "temporary" into its "substitute automobile" provision appears to have created an ambiguity, it is the plaintiff's language; and plaintiff cannot avoid the effect of its choice of terminology. ■ As was said in *Allstate Ins. Co.* v. *Roberts,* 156 Cal. App.2d 755, at page 758 [320 P.2d 90]: " 'The provision for coverage of a substituted vehicle "is for the insured's benefit" and is to be "construed liberally in favor of the insured, if any construction is necessary." ' " In accord: *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.,* 9 Cal.App.3d 508, 518 [88 Cal.Rptr. 246]. ■ Here, it must be concluded that Billy was using the 1964 car as a "temporary substitute automobile" under the terms of plaintiff's policy.

An argument has been made that the 1964 Chevrolet cannot be regarded as a temporary substitute automobile, because the requirement that the automobile be "temporarily used with the permission of the owner" suggests that the automobile must belong to someone other than the person using it; and Billy owned the 1964 Chevrolet and was using it. Since, however, we must give the policy provisions a liberal interpretation in favor of the insured (see *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co., supra,* 9 Cal.App.3d 508, 518; *Allstate Ins. Co.* v. *Roberts, supra,* 156 Cal.App.2d 755, 758), we find this factor not determinative. Had the 1964 Chevrolet been purchased by Billy's father, the named insured, or the father's spouse, it would clearly have been a newly acquired automobile[1].

---

[1]Under the policy, "Owned Automobile" includes a newly acquired automobile, which is defined as "an automobile, ownership of which is acquired by the named

and could not be regarded as a temporary substitute automobile, the policy specifically providing that temporary substitute automobile may not be one owned by the named insured or his spouse. But the 1964 car was not acquired by Billy's father or the father's spouse, as a result of which the provisions regarding a newly acquired automobile are inapplicable. At the same time, since the 1964 Chevrolet was owned by someone other than the named insured or his spouse, it can qualify as a temporary substitute automobile.

Billy was unquestionably given unrestricted permission to use the 1957 Chevrolet in order to go to work and run errands; and, as hereinabove pointed out, the 1964 Chevrolet was acquired for use as a temporary substitute for the 1957 Chevrolet after breakdown of the latter. Under the circumstances, since Billy was using the 1964 Chevrolet for the same purposes for which he had been given permission to use the 1957 Chevrolet, he must be regarded as a permissive user of the 1964 Chevrolet and hence covered as an insured under plaintiff's policy.

The judgment is affirmed.

Tobriner, J., Mosk, J., and Burke, J., concurred.

**SULLIVAN, J.**—I dissent. We must face two questions in this case: First, whether Milton Johnston's policy afforded coverage to the 1964 Chevrolet; and second, if it did, whether the policy also afforded coverage to Billy Johnston. Unless both questions are answered in the affirmative, the insurer did not assume the risk arising from Billy's use of the automobile at the time of the accident. The majority answer the first question in the affirmative but do not deal with the second at all. I am at a loss to understand how they can affirm the judgment without deciding whether Billy was an insured under the policy. I respectfully dissent because the policy itself makes clear that both questions must be answered in the negative and that the judgment must be reversed.

Taking up the first question, I look to the policy itself. The pertinent provisions are as follows: "[State Farm] . . . agrees with the named insured . . . (1) To pay on behalf of the *insured* all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons, and (B) property damage, caused

---

insured or his spouse, if a resident of the same household, if (1) it replaces an automobile owned by either and covered by this policy . . . and (2) the named insured within 30 days following such delivery date applies to the company for insurance on such newly acquired automobile . . . ."

by accident arising out of the ownership, maintenance or use . . . of the *owned automobile* . . ." (Italics added.)

Under a section entitled "Definitions—Insuring Agreements I and II," the following terms are defined:

"Owned Automobile—means the motor vehicle or trailer described in the declarations, and includes a temporary substitute automobile, [and] a newly acquired automobile . . .

" . . . . . . . . . . . . . . . . .

"Temporary Substitute Automobile—means an automobile not owned by the named insured or his spouse while *temporarily used with the permission of the owner* as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

"Newly Acquired Automobile—means an automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household, if (1) it replaces an automobile owned by either and covered by this policy . . . and (2) the named insured within 30 days following such delivery date applies to the company for insurance on such newly acquired automobile . . ." (Italics added.)

It is manifest from the above language that the policy affords coverage to the "owned automobile," that is, the automobile described in the declarations or its substitute which may be "temporary" or "newly acquired." The original vehicle (the 1957 Chevrolet), not its replacement (the 1964 Chevrolet), was the vehicle described in the policy issued to Milton Johnston, the father of Billy. At that time, of course, Billy was unmarried and living at home with his parents. The 1964 Chevrolet which Billy purchased in January 1968, after he married and established a home of his own was not owned by the named insured, Milton Johnston, or his spouse. It is beyond argument, then, that it could not be a "newly acquired automobile" of Mr. and Mrs. Milton Johnston so as to fall within the coverage of their policy. It follows then that to be afforded coverage under Milton Johnston's policy, the 1964 Chevrolet would have to meet the above definition of a "temporary substitute automobile."

The question then boils down to this: Can the "temporary substitute automobile" clause in Milton's policy be reasonably construed to include a vehicle *owned* and *used* by Billy, a person no longer a resident of Milton's household? I am of the view that a full examination of the policy compels a negative answer. As we have said, "In the construction of insurance policies

. . . the whole of the contract is to be taken together, each clause helping to interpret the other." (*Jurd* v. *Pacific Indemnity Co.* (1967) 57 Cal.2d 699, 704 [21 Cal.Rptr. 793, 371 P.2d 569].)

In the first place, the policy expressly states that a temporary substitute automobile cannot be a vehicle owned by either the *named insured* or his spouse. Secondly, a careful reading of the clause demonstrates that the temporary substitute cannot be a vehicle owned by the person who is *using* the automobile. The clause itself clearly requires that the automobile be "temporarily used with the permission of the owner." The majority misconstrue this provision to require the permission of Milton Johnston, who held no ownership interest in the 1964 Chevrolet. In fact, what the clause unmistakably does is to require the permission of the owner of the substitute automobile, a point recognized by defendants, who argue that Billy could give himself permission to use a vehicle owned by him. Defendants' strained construction of the clause cannot withstand analysis. Since use is one of the incidents of ownership of a vehicle, it is an absurd proposition to suggest that the clause be construed to require that the owner give permission to himself to use his own vehicle.

Moreover, the term "substitute" within the phrase "temporary substitute automobile" clearly indicates that the clause did not afford coverage to the 1964 Chevrolet. A replacement vehicle cannot be a "substitute," it has been held, unless it "was in the possession or under the control of the insured to the same extent and effect as the disabled car would have been except for its disablement." (*Tanner* v. *Pennsylvania Threshermen & F. M. C. Ins. Co.* (6th Cir. 1955) 226 F.2d 498, 500; see also 12 Couch on Insurance (2d ed. 1964) § 45:233, pp. 271-272.) Here the 1964 Chevrolet was not in the possession of or under the control of the named insured, Milton Johnston; and, unlike the described vehicle it was not owned by Milton. The 1964 Chevrolet was not, therefore, a "substitute" for the described vehicle.

The majority seek to avert the impact of the "temporary substitute automobile" clause by finding ambiguity in part of its language. Focusing on the phrase "temporarily used with the permission of the owner," they maintain that the word "temporarily" is ambiguous. Resolving its meaning in favor of the insured, they declare that Billy could use a "temporary" vehicle for the remainder of the policy period. They rely heavily on *Nelson* v. *St. Paul Mercury Insurance Company* (1967) 83 S.D. 32 [153 N.W.2d 397], and *Harte* v. *Peerless Insurance Company* (1962) 123 Vt. 120 [183 A.2d 223], in reaching this result. Their reliance is indeed misplaced. *Nelson* merely decided that the *described* automobile did not need to be

restored to its normal use because any "breakdown, loss or destruction" of the automobile might be permanent. Accordingly, the term "temporarily" does not apply to the described vehicle but is, the *Nelson* court concluded (p. 400), a "restriction on the use of the *substitute* vehicle." (Italics added.) In *Harte* it was held that the character of the use, whether temporary or permanent, must be decided with reference to the intention of the user. There the court stated (183 A.2d p. 226), ". . . the object of the substitution clause is to afford a temporary insurance expedient to protect the insured's operation of a borrowed vehicle . . . [and that since the] insurance contract itself fixes no limit . . . during which the temporary extended coverage is to be effective . . . the intention of the insured [is controlling]." (See also 12 Couch on Insurance, *supra*, §§ 45:230, 45:231, pp. 269-270.) Here, the trial court made no finding of fact concerning the intent of Billy Johnston with respect to the nature of his use of the 1964 Chevrolet. However, in declaring that Billy may "temporarily" use the 1964 Chevrolet for the remainder of the policy period, the majority have applied no restriction at all, other than the term of the policy in which coverage is afforded. Consequently, they strip the term "temporarily" of its real significance.

Whatever might have been the intent of Billy with regard to the use of the 1964 Chevrolet, I conclude for two related reasons that the temporary substitute clause did not afford coverage: First, the clause itself implies that a temporary substitute automobile may not be owned by the user; and second, the replacement vehicle (1964 Chevrolet) was not a "substitute" for the described vehicle since Milton, the named insured, failed to control or possess the 1964 Chevrolet as he did the original automobile.

I now turn to the second question presented by this appeal. Assuming arguendo that the 1964 Chevrolet was a "temporary substitute automobile," we must still determine whether coverage was afforded to Billy Johnston as an insured under the policy. As previously mentioned, the majority fail to consider this question.

The provisions defining an insured, contained in what is commonly referred to as an omnibus clause, state as follows: "Insured . . . includes (1) the named insured, and (2) if the named insured is a person or persons, also includes his or their spouse(s), if a resident of the same household, and (3) if residents of the same household, the relatives of the first person named in the declarations, or of his spouse, and (4) any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured or such spouse and are within the scope of such permission, and (5) . . .

any person or organization legally responsible for the use of such owned automobile by an insured as defined under the four subsections above."

Of the five subsections only subsection (4), defining a permissive user, is potentially applicable. Since Billy was neither the named insured nor a resident of his parents' household, subsections (1) through (3) cannot apply. Moreover, subsection (5), which extends coverage only to *another* who is liable for the use of an automobile by the insured, is inapplicable since a precondition of its applicability is that the user be an insured as defined by any of the four previous subsections. The permissive user provision remains as a possible basis for coverage.

However, since neither Milton Johnston, the named insured, nor his spouse, could give permission to use an automobile in which they had no ownership interest, subsection (4) is also inapplicable. Without the "power to grant or withhold" the use of an automobile, no basis exists to extend permission for its use. (*Didlake* v. *Standard Ins. Co.* (10th Cir. 1952) 195 F.2d 247, 251 [33 A.L.R.2d 941]; see also 12 Couch on Insurance, *supra,* § 45:342, pp. 347-348.)

Milton Johnston had no ownership interest in the 1964 Chevrolet nor did he exercise any parental control over Billy. Although the trial court found that the father "approved" of the purchase of the automobile, his assent, without the authority to control the use of the automobile, is nothing more than a gratuitous act and of no legal significance in relation to the permissive use provision in the omnibus clause of the policy. In sum, at the time of the accident Billy Johnston was the owner of the 1964 Chevrolet and was operating such vehicle as owner. Neither Mr. nor Mrs. Johnston owned the vehicle and therefore neither of them was in a position to grant permission to anyone to use it. Furthermore, Billy required no permission from them or anyone else to use the Chevrolet since he himself was the owner. As a result Billy was not a person using the automobile with the permission of the named insured and therefore did not fall within the definition of "insured" under the terms of the policy.

Quite apart from whether it was proper for Billy to be included as an additional insured with regard to the use of the original automobile when it was understood that he was to be the primary user of that automobile, I am unable to reach the result that he can be considered the permissive user of a temporary substitute automobile owned by him. Simply stated, it defies any notion of logic to suggest that Billy was "temporarily" using a vehicle in which he had acquired an ownership interest as a "substitute"

for an automobile that could no longer be used by him or the named insureds. Nor can it be said that the named insureds, Milton Johnston or his spouse, without any control over the use of the automobile, could extend permission for its use by Billy. Therefore, State Farm, the insurer, did not assume the risk of Billy's use of the automobile at the time of the collision.

To recapitulate, the policy issued by State Farm to Milton Johnston covered neither the Chevrolet which Billy purchased nor Billy himself as an insured. Billy had married, had ceased to be a resident of his father's household, had established his own home and had bought his own car. It not only defies logic but also offends fairness to say that he remained covered by his father's policy. I think that the simple answer to the present problem is that Billy should have purchased his own insurance for his own car.

I would reverse the judgment.

Wright, C. J., concurred.

Appellant's petition for a rehearing was denied May 3, 1973. Wright, C. J., and Sullivan, J., were of the opinion that the petition should be granted.