## MERCHANTS MUTUAL INSURANCE CO.

v.

## MAINE BONDING & CASUALTY CO.

Supreme Judicial Court of Maine.

Submitted Sept. 6, 1991.
Decided Sept. 26, 1991.

Harry B. Center, II, Randall E. Smith, Smith & Elliott, Saco, for plaintiff.

James D. Poliquin, Norman, Hanson & DeTroy, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, and COLLINS, JJ.

McKUSICK, Chief Justice.

The sole issue before the Superior Court (York County, *Fritzsche, J.*) and now before us on this appeal requires our interpretation of the "replacement automobile" clause in an automobile insurance policy issued by defendant Maine Bonding & Casualty Co. (Maine Bonding). On Maine Bonding's appeal, we affirm the Superior Court judgment in favor of plaintiff Merchants Mutual Insurance Co. (Merchants). The plain language of the "replacement automobile" clause extended coverage to a second automobile, which had been bought by the insured during the policy year, when later the only automobile described in the policy became inoperable by reason of fire damage.

On July 5, 1981, a 1969 Plymouth automobile owned and operated by Richard Bellino collided with a vehicle driven by Neil Powers. Powers was killed, and several members of his family, who were passengers in his car, were seriously injured. Merchants paid the claims of the Powers family under an automobile policy issued by it to Neil Powers. Merchants then brought the present subrogation claim against Maine Bonding seeking to recover up to the policy limit of $40,000 on a policy issued by Maine Bonding to Richard Bellino.

Bellino's Maine Bonding policy was in effect from November 21, 1980, to November 21, 1981. It covered claims arising out of Bellino's ownership, maintenance, or use of an "owned automobile," a term defined to mean as here relevant:

(a) a[n] ... automobile described in this policy for which a specific premium charge indicates that coverage is afforded.

....

(c) *a[n] ... automobile ownership of which is acquired by the name insured during the policy period, provided*

(1) *it replaces an owned automobile as defined in (a) above, or....*

(Emphasis added.) The declarations page of the policy listed one "described" automobile, a 1968 Plymouth Fury convertible owned by Bellino.

In February 1981, during the policy year, Bellino bought a 1969 hardtop Plymouth.

He purchased the 1969 Plymouth as an additional vehicle without any intention of disposing of the 1968 convertible and replacing it with the 1969 car. On June 27, 1981, a fire severely damaged the 1968 Plymouth, rendering it inoperable. At the time of the accident one week later, Bellino was driving the 1969 Plymouth.

The parties submitted this insurance coverage dispute to the Superior Court on an agreed record. The sole question before the court was whether at the time of the accident the 1969 auto was covered as an "owned automobile" under the Maine Bonding policy. Maine Bonding stipulated that if coverage was found to exist, the court should enter judgment against it for $40,000, the full policy limit. Construing the "replacement automobile" clause quoted above, the Superior Court ruled that:

> [T]he 1969 Plymouth replaced the 1968 "owned automobile" when the fire destroyed the 1968 Plymouth. After the fire Bellino had only one vehicle. Maine Bonding cannot be required to insure multiple vehicles without an additional premium and an agreement to do so, but it is required to insure the 1969 once the 1968 was destroyed.

Thus the court held the 1969 Plymouth to be an "owned automobile" within the policy's definition of that term and it accordingly entered judgment for Merchants against Maine Bonding for $40,000.

On this appeal we must interpret the "replacement automobile" clause of the Maine Bonding policy according to its plain and commonly accepted meaning. *See Brackett v. Middlesex Ins. Co.*, 486 A.2d 1188, 1190 (Me.1985). That clause unambiguously sets down only two conditions for an automobile to come under coverage as a replacement for the automobile specifically described in the policy.

The first condition is that "ownership [be] acquired by the named insured during the policy period...." This language would have excluded the 1969 Plymouth from ever being brought under the policy if it had been owned by Bellino before November 21, 1980, rather than having been acquired in February 1981. On the present facts, however, the first condition for it to be a replacement automobile is obviously satisfied.

The second condition, which is likewise satisfied, is that the second automobile "replaces an owned automobile" described in the policy. Thus the precise inquiry here is whether Bellino's 1969 Plymouth had "replaced" the described 1968 Plymouth by the time of the accident on July 5, 1981. Albeit in a footnote, we have previously recognized that "[t]he majority of states that have considered this issue accept the proposition that for an acquired vehicle to 'replace' the vehicle described in the policy, the described vehicle must have been disposed of or be inoperable." *Government Employees Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 458 A.2d 1205, 1211 n. 6 (Me.1983) (citing *Corbett v. Allstate Ins. Co.*, 396 Mich. 103, 105, 238 N.W.2d 30, 31 (1976), other citations omitted). The rationale for this requirement was explained in *Corbett v. Allstate Ins. Co.*:

> "In the replacement-automobile cases the courts are usually willing to allow coverage under the policy as long as there is only one operable car. It makes no difference that the replacement car is purchased before the replaced car is sold as long as the replaced car is sold or is not operable at the time of the accident. In this way other users of the highways are protected and the insurance company's liability is limited to the operation of one car by the insured."

396 Mich. at 105, 238 N.W.2d at 31 (quoting *St. Paul Fire & Marine Ins. Co. v. Nyquist*, 286 Minn. 157, 175 N.W.2d 494, 496 (1970)). The Michigan court deemed this standard for replacement to be sufficient because "[a]t no time was there more than one operable, covered vehicle under the ... policy. The listed vehicle was inoperable, and the insurer bore no risk of double exposure." *Id.* (citations omitted).

That reasoning carries over to the present facts, for at no time did Maine Bonding bear the risk of insuring more than one vehicle. Until June 27, 1981, the 1969 Plymouth was an uninsured additional vehicle, but on that date fire rendered the

insured 1968 Plymouth inoperable for an indefinite period and the 1969 Plymouth became the one and only operable vehicle owned by the insured Bellino. From June 27, 1981, forward the 1969 Plymouth replaced the 1968 automobile previously insured under the Maine Bonding policy.

Maine Bonding first argues that even if the described 1968 Plymouth convertible had been operable on the day of the accident, July 5, 1981, Bellino would have used the 1969 Plymouth and that the 1969 Plymouth was thus not "in fact" a replacement for the 1968 car. Maine Bonding points out that Bellino purchased the 1969 hardtop to use for travel to the Boston area specifically to avoid vandalism to his 1968 convertible. Since the accident occurred while Bellino was en route to Boston, Maine Bonding asserts that he would likely have used the 1969 hardtop, and not the 1968 convertible, on that day even if the convertible had been operable. We can quickly dispose of that argument. The Superior Court correctly held that the 1969 Plymouth's coverage under Bellino's policy on July 5, 1981, is unaffected by how Bellino might have acted in a hypothetical situation. That the 1969 Plymouth would not have qualified as a replacement automobile in a different set of circumstances does not prevent it from being a replacement when the actual facts match the terms of the policy.

Second, Maine Bonding argues that under its policy the 1969 Plymouth could not be an "owned automobile" because Bellino did not acquire it with the intent to replace the automobile described in the policy. We also reject that argument. The controlling policy language is free of ambiguity. It states that a vehicle is an "owned" and hence a covered automobile, first, if it was acquired during the policy period and, second, if it replaces a described automobile. These are two separate and distinct requirements; the policy language does not tie the timing of the acquisition to the fact of replacement. As soon as both of the separately stated conditions have been met, the insurance coverage shifts from the described automobile to the second automobile. Nothing more is required. The rhetorical structure of the Maine Bonding "replacement automobile" clause separately stating the two conditions distinguishes this case from decisions in other jurisdictions construing different policy language. *Cf. Austin Mut. Ins. Co. v. Modern Service Ins. Co.*, 255 N.W.2d 224 (Minn.1977) ("replacement automobile" clause entitled "Newly Acquired Automobile" construed to require that new car be acquired to replace described automobile).

Because by July 5, 1981, Bellino's 1969 Plymouth had met the only conditions imposed by the plain language of the "replacement automobile" clause of Maine Bonding's policy, that car was at that time an "owned automobile" for which the policy afforded coverage.

The entry is:

Judgment affirmed.

All concurring.